**P O R T E R | S C O T T**
A PROFESSIONAL CORPORATION
John R. Whitefleet, SBN 213301
jwhitefleet@porterscott.com
Zachary J. Ayre, SBN 356392
zayre@porterscott.com
2180 Harvard Street, Suite 500
Sacramento, California 95815
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendant COUNTY OF SISKIYOU
*(Exempt from Filing Fees Pursuant to Government Code § 6103)*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XAO THAO, | Case No. 2:23-cv-02563-DJC-CKD |
| Plaintiffs, | **DECLARATION OF JOHN R. WHITEFLEET IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| COUNTY OF SISKIYOU, and DOES 1, THROUGH 50, | Date: September 18, 2025 |
| | Time: 1:30 P.M. |
| | Courtroom: 7, 14th Floor |
| Defendants. | |
| _____/ | Complaint Filed: 11/06/2023 |

I, John R. Whitefleet, declare:

1.     I am an attorney at law licensed to practice in the United States District Court for the Eastern District of California as well as all state court of California and am a shareholder with the law firm of Porter Scott, attorneys of record for Defendant in the above-captioned matter. The facts stated in this declaration are within my personal knowledge and if called to testify, I could and would competently testify to them.

2.     Attached as Exhibit A hereto is a true and correct copy of the deposition transcript of Plaintiff taken February 20, 2025.

/ / /

1

**DECLARATION OF JOHN R. WHITEFLEET IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

3.     On June 28, 2024, my office served written discovery to Plaintiff to include Requests for Production of Documents, Special Interrogatories, and Requests for Admissions ("RFA").   A true and correct copy of the Requests for Admission are attached hereto as Exhibit B.

4.     Plaintiff failed to provide responses by the due date of July 29, 2024, and no requests for extensions were sought.  On August 12, 2024, I transmitted an email to counsel for Plaintiff requesting responses without objection, noting that the Requests for Admission had been deemed admitted.  The email chain showing the transmission of the discovery, and August 12, 2024 follow up are attached collectively hereto as Exhibit C.

5.     On August 30, 3034, counsel for Plaintiff transmitted responses to the Requests for Production of Documents and Special Interrogatories.  At no time has Plaintiff attempted to respond to the RFA nor sought relief from them being deemed admitted.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.  This declaration was executed on this July 25, 2025, in Sacramento, California.

/s/ John R. Whitefleet
John R. Whitefleet

**DECLARATION OF JOHN R. WHITEFLEET IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# EXHIBIT A

Deposition of

**Xao Thao**

February 20, 2025

Xao Thao

vs.

County of Siskiyou



www.aptusCR.com | 866.999.8310

1              UNITED STATES DISTRICT COURT

2              EASTERN DISTRICT OF CALIFORNIA

3    _____
                                        )
4    XAO THAO,                          )
                                        )
5                   Plaintiff,          )
                                        )
6         v.                            )  Case No.:
                                        )  2:23-cv-02563-DJC-CKD
7    COUNTY OF SISKIYOU, and DOES 1     )
     through 50,                        )
8                                       )
                    Defendants.         )
9    _____)

10

11

12

13

14          VIDEOCONFERENCE DEPOSITION OF XAO THAO

15          Thursday, February 20, 2025, 10:01 a.m.

16              Via Remote Zoom Videoconference

17

18

19

20

21

22   Reported by:

23   Doreen Furuta Landes

24   RPR, CSR No. 5778

25   Job No.:  10158253

1        UNITED STATES DISTRICT COURT

2        EASTERN DISTRICT OF CALIFORNIA

3    _____

4    XAO THAO,                        )
                                      )
5                    Plaintiff,       )
                                      )
6        v.                           ) Case No.:
                                      ) 2:23-cv-02563-DJC-CKD
7    COUNTY OF SISKIYOU, and DOES 1   )
     through 50,                      )
8                                     )
                     Defendants.      )
9    _____)

10

11

12

13

14        VIDEOCONFERENCE DEPOSITION OF XAO THAO

15        Taken on behalf of the Defendant, Via Remote

16   Zoom Videoconference, beginning at 10:01 a.m. and ending

17   at 11:56 a.m., on Thursday, February 20, 2025, before Doreen

18   Furuta Landes, RPR, Certified Shorthand Reporter No. 5778 in

19   and for the State of California.

20

21

22

23

24

25

Page 2

```
 1   APPEARANCES (Via Remote Zoom Videoconference):

 2

 3        For the Plaintiff:

 4             SAMUEL C. WILLIAMS, ATTORNEY AT LAW, INC.
               BY:  SAMUEL C. WILLIAMS, ESQ.
 5             1263 California Street
               Redding, California  96001
 6             (530) 255-8171
               samuel.crispan.williams@gmail.com
 7
          For the Defendant:
 8
               PORTER SCOTT, APC
 9             BY:  JOHN R. WHITEFLEET, ESQ.
               2180 Harvard Street, Suite 500
10             Sacramento, California  95815
               (916) 929-1481
11             jwhitefleet@porterscott.com

12        White Hmong Interpreter:

13             LISA YANG-XIONG, I.D. #96967
               RIOS & NICHOLS, INC.
14             402 West Broadway, Suite 400
               San Diego, California  92101
15             (619) 595-3105

16        Also present:

17             CHRIS LANDRUM, Tech Monitor
               Aptus Court Reporting
18             401 West A Street, Suite 1680
               San Diego, California  92101
19             (619) 546-9151

20
               (Mr. Williams and the deponent appearing together,
21              all other parties appearing remotely.)

22                        - o O o -

23

24

25
```

Case 2:23-cv-02563-DJC-CKD    Document 11-4    Filed 07/25/25    Page 8 of 50

Xao Thao vs.
Xao Thao                                                        County of Siskiyou

```
 1                      I N D E X

 2

 3   Deposition: XAO THAO

 4          Thursday, February 20, 2025

 5   Examination:                                    Page

 6          By Mr. Whitefleet                          5

 7

 8

 9

10

11                      E X H I B I T S

12                      (NONE OFFERED)

13

14

15

16

17          Additional Information Requested:

18                      (NONE)

19

20

21

22

23   Witness Declaration Page:    Page 36
     Witness Correction Page:    Page 38,39
24

25
```

Page 4

Xao Thao

```
 1                THURSDAY, FEBRUARY 20, 2025, 10:01 A.M.

 2                            - o O o -

 3                       LISA YANG-XIONG,

 4          having been first duly placed under oath to act

 5           as the English/White Hmong interpreter herein; and

 6

 7                          XAO THAO,

 8        the Plaintiff herein, called by Defendant and having

 9       been first duly placed under oath, testified as follows:

10

11                          EXAMINATION

12    BY MR. WHITEFLEET:

13        Q.   Okay.  Good morning.  Please state your name and

14    spell your name for the record.

15        A.   My name is Xao Thao.  That is spelled X-a-o

16    T-h-a-o.

17        Q.   And, Mr. Thao, my name is John Whitefleet.  I

18    represent the defendants in this matter and we're here to

19    take your deposition in this lawsuit today.

20        A.   Okay.  Sure.

21        Q.   I'm assuming you've not had your deposition ever

22    taken before; is that correct?

23        A.   No, never before.

24        Q.   Okay.  So there are a few ground rules that we

25    need to cover.
```

1    A.   Okay, sure.

2    Q.   My understanding is that you do understand some

3  English and speak some English.  However, because we're

4  doing everything through an interpreter today, you should

5  wait for the interpreter and answer in your native language.

6    A.   That's fine.

7    Q.   And do your best to wait until you hear the

8  question before you respond.  Even though you may understand

9  the question in English, wait for the translation so then

10  you can respond.  The court reporter can only take down one

11  person talking at a time.  Okay?

12    A.   That's fine.

13    Q.   If for whatever reason you don't understand a

14  question, you're always welcome to ask me to clarify or

15  rephrase.

16    A.   Okay, sure.

17    Q.   And you're doing a great job so far of giving

18  verbal responses.  If you nod your head or shrug your

19  shoulders, I'm going to ask you "is that a yes or a no" or

20  whatever the response is because the court reporter needs to

21  have verbal responses.  Do you understand that?

22    A.   Okay.  I got it.

23    Q.   I'm entitled to your best testimony, which may

24  mean that I ask you about distances or times.  And if you

25  don't have the specific information, you can still provide

1    me an estimate if you are able to do so.  Do you understand

2    that?

3        A.    I understand.

4        Q.    Okay.  Have you taken any medications, drugs, or

5    alcohol in the last 24 hours that would affect your memory

6    or your ability to testify?

7        A.    No, I haven't taken any medication.

8        Q.    Okay.  What did you do to prepare for today?

9        A.    I don't know.

10       Q.    Did you review any document -- excuse me --

11   documents or videos in preparation for today?

12       A.    No, I haven't seen anything.

13       Q.    Okay.  Now, based on information that I have from

14   the documents that were provided to me in this case, I

15   understand that you immigrated to the United States in the

16   1990s from Laos; is that right?

17       MR. WILLIAMS:  Objection; based on relevance.

18       MR. WHITEFLEET:  Just general background.

19   BY MR. WHITEFLEET:

20       Q.    You can answer.

21       THE INTERPRETER:  As the interpreter, I need to clarify

22   because I'm not understanding.

23           (Interpreter and witness conversing in Hmong.)

24       THE WITNESS:  I hold on to the Fifth Amendment.

25       MR. WHITEFLEET:  Okay.  Counsel, you're going to allow

Case 2:23-cv-02563-DJC-CKD    Document 11-4    Filed 07/25/25    Page 12 of 50

Xao Thao                                    Xao Thao vs.
                                    County of Siskiyou

1  your client to assert the Fifth Amendment based on that

2  question?

3      MR. WILLIAMS:  Give me just a moment, if you would.

4      MR. WHITEFLEET:  Do you want to go off record?

5      MR. WILLIAMS:  I don't think that's necessary.  Just

6  give me a second here and I will -- so I think --

7      THE INTERPRETER:  And as the interpreter, I'll

8  interpret what you just said.

9      MR. WILLIAMS:  Maybe it would make sense to go off the

10  record for just a minute so I can talk to him.

11      MR. WHITEFLEET:  Yeah, we'll go off record.

12      MR. WILLIAMS:  All right.

13          (A one-minute break was taken at 10:12 a.m.)

14      MR. WHITEFLEET:  So let's go back on the record.

15  BY MR. WHITEFLEET:

16      Q.    All right.  Mr. Thao, I understand that you're

17  going to answer the question now, if you have it in mind?

18      A.    I can answer.

19      Q.    Go ahead.

20      A.    I came to America June 1st, 1989.

21      Q.    Okay.  And where are you currently living?

22      A.    In Sacramento.

23      Q.    What's the address?

24      A.    2559 Altos Avenue, Sacramento, California, 95815.

25      Q.    How long have you lived at that address?

Case 2:23-cv-02563-DJC-CKD    Document 11-4    Filed 07/25/25    Page 13 of 50

Xao Thao                                                      Xao Thao vs.
                                                      County of Siskiyou

1      A.    2020.

2      Q.    **Since 2020?**

3      A.    That's correct.

4      Q.    **Okay.  Have you ever lived at 6350 Clark Road,**

5  **Hornbrook, California?**

6      A.    That's not my address.

7      Q.    **And my question is, though, have you ever lived at**

8  **that address in Hornbrook?**

9      A.    To visit, yes.  But to live, no.

10     Q.    **And who owns the property at 6350 Clark Road,**

11 **Hornbrook?**

12     A.    That's my son Tria Thao's home and land.

13     Q.    **How is your son's first name spelled?**

14     THE INTERPRETER:  As the interpreter, I am just going

15 to need to clarify because I wasn't sure either.

16         (Interpreter and witness conversing in Hmong.)

17     THE WITNESS:  T-r-i-a.

18     THE INTERPRETER:  It's Tria, T-r-i-a.

19 BY MR. WHITEFLEET:

20     Q.    **And how long has your son owned the property at**

21 **6350 Clark Road, Hornbrook?**

22     A.    I don't know that.

23     Q.    **Can you give me an approximate time frame?**

24     A.    If you want me to guess, I can't do that.

25     Q.    **Right.  So it wouldn't be a guess, because you**

1  would be familiar with approximately how long your son has

2  owned the property.  You can give me, say for example, over

3  five years or over ten years or a range of time frame.

4       A.   Maybe around five years, I guess.

5       Q.   So around the same time that you moved into the

6  2559 Altos Avenue, Sacramento home?

7       A.   That's correct.

8       Q.   And how often would you visit the property in

9  Hornbrook?

10       A.   I would go visit maybe once every one to two

11  months because I'm the one who cares for the land, the

12  landscaping.

13       Q.   Okay.  All right.  Does your family own any other

14  property in Siskiyou County?

15       A.   I don't know.

16       Q.   Okay.  Does your son own any other property in

17  Siskiyou County?

18       A.   I don't know.

19       Q.   Okay.  How many children do you have?

20       A.   Eight.

21       Q.   And what is the age ranges?

22       A.   Okay.  So the numbers that I'm giving you, they're

23  not exact numbers or exact ages for each of the children,

24  but I'm just going to tell you what I can recall.  The

25  oldest is 46.  The middle one is 44.  The third is 42.  The

1  fourth is 40.  The fifth is 34.  The sixth is 35 or 36.  I

2  can't remember the seventh, but the eighth I'm going to say

3  is around 38.

4      **Q.  Thank you.  One of the medical records I have says**

5  **that you indicated to someone at Elica Health Centers that**

6  **you had previously worked as a card dealer in a casino; is**

7  **that correct?**

8      A.  Yes, you are correct.  However, I, yes, was a card

9  dealer.  A card dealer, not like a player or gambler at the

10  casino.

11     **Q.  And the records indicate that you told the**

12  **provider at Elica Health Centers that you have been on**

13  **disability since 2011; is that correct?**

14     A.  That's correct.

15     **Q.  What kind of disability?**

16     THE INTERPRETER:  And as the interpreter, I need to

17  clarify just to make sure I interpret correctly.

18         (Interpreter and witness conversing in Hmong.)

19     THE WITNESS:  So I have pain in my feet, I can't wear

20  shoes.  I also have pain in my hands.

21  BY MR. WHITEFLEET:

22     **Q.  Have those conditions existed since before 2011?**

23     A.  That's correct.

24     **Q.  And is there some condition, medical condition, or**

25  **was there some sort of accident that you understand to be**

1    the cause of the pain in your feet and your hands?

2        A.   Yes.   There was a doctor involved and that's the

3    reason why they saw that I could not -- that my feet were

4    hurting, my hands were hurting, so I couldn't work.   And

5    that's why they got me the necessary paperwork to apply for

6    disability.

7        Q.   The medical records appear to say that you've been

8    suffering from gout since the 1990s; is that correct?

9        A.   That's correct.

10       Q.   And that you've had arthritis in your knees, legs,

11   and hands since approximately 1996; is that correct?

12       A.   That's correct.

13       Q.   Okay.   So, we're here today to talk about an

14   incident that occurred on August 16th of 2022.   Do you

15   recall that being the date?

16       A.   That's correct.

17       Q.   Okay.   And on that date you were visiting the 6350

18   Clark Road property in Hornbrook?

19       A.   That's correct.

20       Q.   When did you arrive on the property?   Was it the

21   same day, the day before, a week before?

22       A.   The day before.

23       Q.   And did you travel alone or did you go up to

24   Hornbrook with someone?

25       A.   It was just me.

Xao Thao

1      Q.   Okay.  At some point, did your wife join you at

2   the Hornbrook property?

3      THE INTERPRETER:  As the interpreter, I just need to

4   clarify so I can interpret correctly.

5          (Interpreter and witness conversing in Hmong.)

6      THE WITNESS:  My wife lives there.

7   BY MR. WHITEFLEET:

8      Q.   How long has your wife lived at the Hornbrook

9   property?

10     A.   Ever since my son purchased that property.

11     Q.   Okay.  Now, as of August 16th, 2022, there were

12  marijuana plants being grown on the property; correct?

13     A.   I plead the Fifth Amendment on that.

14     Q.   Okay.  All right.  Let me clarify.  As of

15  August 16th, 2022, there were marijuana plants being grown

16  on 6350 Clark Road, Hornbrook, California; correct?

17     A.   I plead the Fifth.

18     Q.   Okay.  The marijuana plants that were found on the

19  property by law enforcement, were these plants something

20  that you were assisting in growing?

21     A.   I'm just going to plead the Fifth Amendment.

22     Q.   Did you ever tell a medical provider that the

23  property, your son's property, is your farm?

24     A.   I plead the Fifth Amendment.

25     Q.   On August 17th, 2022, did you visit a Fairchild

Xao Thao

1  Medical Center?

2      A.   That's correct.

3      Q.   And did you tell medical providers that you were

4  arrested near your farm?

5      A.   I plead the Fifth Amendment.

6      Q.   Would you call 6350 Clark Road, Hornbrook, your

7  home?

8      A.   No, my home is in Sacramento.

9      Q.   Okay.  Would you describe the property at 6350

10  Clark Road?

11      A.   Well, it's like land, a piece of land with two

12  parcels about 5 acres altogether and there's a mobile home

13  there.

14      Q.   Okay.  The two parcels are all considered part of

15  6350 Clark Road to your understanding?

16      A.   Both parcels are owned by my son Tria, but one --

17  the mobile home is only on one parcel, but my son owns both

18  parcels.  They're separate parcels.

19      Q.   And when you visit, do you stay in the mobile

20  home?

21      A.   Yes, I do stay there.

22      Q.   All right.  So on August 16th, 2022, what first

23  alerted you to the presence of any law enforcement?

24      A.   I want to plead the Fifth Amendment.

25      Q.   Did you at approximately 2:00 p.m. on August 16th,

1    2022, observe approximately ten Siskiyou County Sheriff's

2    office vehicles driving up to the property at 6350 Clark

3    Road?

4        A.    I plead the Fifth Amendment.

5        MR. WHITEFLEET:  So, Mr. Williams, I'm just reading

6    directly from the complaint.  If your client wants to

7    continue to take the Fifth Amendment, that's fine, but I'm

8    just letting you know I will be seeking a Court

9    determination that any time he takes the Fifth Amendment in

10   connection with any of the questions, I'll be seeking an

11   adverse finding that the answer would be contrary to your

12   client's interests.

13       MR. WILLIAMS:  I understand that.

14   BY MR. WHITEFLEET:

15       Q.    Okay.

16       A.    Okay.  That's fine.

17       Q.    Mr. Thao, in the afternoon of August 16, 2022,

18   were you walking the property, 6350 Clark Road at all?

19       A.    I just plead the Fifth Amendment.

20       Q.    Did you have binoculars on you on August 16th,

21   2022?

22       A.    I plead the Fifth Amendment.

23       Q.    When you were arrested, you had a backpack on your

24   person; is that correct?

25       A.    I plead the Fifth Amendment.

Xao Thao

1      Q.   All right.  Reading from the complaint, Page 3,

2   lines -- starting at Line 6, Mr. Thao, due to the number of

3   vehicles, is it true that you could not tell what the

4   officers were doing so you walked down the hill to a vacant

5   parcel not owned by you to have a look?

6      THE INTERPRETER:  As the interpreter, can you repeat

7   that question?

8      MR. WHITEFLEET:  Sure.

9   BY MR. WHITEFLEET:

10     Q.   Reading from Page 3, Line 6 of the complaint --

11     THE INTERPRETER:  Uh-huh.

12   BY MR. WHITEFLEET:

13     Q.   -- due to the number of vehicles, is it true,

14   Mr. Thao, you could not tell what the officers were doing,

15   so you walked down the hill to a vacant parcel not owned by

16   you to have a look?

17     A.   I plead the Fifth Amendment.

18     Q.   All right.  Is it true, Mr. Thao, that you were

19   standing on the edge of the adjacent property and you

20   observed law enforcement officers?

21     A.   I plead the Fifth Amendment.

22     Q.   Mr. Thao, is it true that -- excuse me.  Strike

23   that.

24          Mr. Thao, you were aware that law enforcement

25   officers were present on 6350 Clark Road before you --

1    excuse me -- before they were on the property?

2        A.    I plead the Fifth Amendment.

3        Q.    Is it true that you, as you were standing on the

4    edge of the adjacent property, you believed officers saw you

5    standing and watching and started to come towards you?

6        A.    I plead the Fifth Amendment.

7        Q.    Have you ever had encounters with Siskiyou County

8    Sheriff's Department prior to August 16, 2022?

9        A.    I plead the Fifth Amendment.

10        Q.    Do you know any Siskiyou County Sheriff's

11    deputies?

12        A.    I plead the Fifth Amendment.

13        MR. WHITEFLEET:  Counsel, that doesn't invoke the --

14    well, all right.  You want your client to continue asserting

15    the Fifth Amendment on generalized questions.  I would -- I

16    don't think that's appropriate, but --

17        MR. WILLIAMS:  If I could -- if I could talk to him for

18    just a second.

19        MR. WHITEFLEET:  All right.  Go off record.

20        MR. WILLIAMS:  All right.

21            (A one-minute break was taken at 10:47 a.m.)

22    BY MR. WHITEFLEET:

23        Q.    Back on the record.

24            All right.  I'm going back then to the last couple

25    of questions, Mr. Thao.  Have you ever had encounters with

**Page 17**

1   Siskiyou County Sheriff's deputies prior to August 16th,

2   2022?

3        A.    No, I don't know.

4        Q.    Would you recognize any Siskiyou County Sheriff's

5   deputy by looking at them?

6        A.    No, I don't know.

7        Q.    Do you know any Siskiyou County deputy by name?

8        A.    I don't know.

9        Q.    Do you know who Sergeant Richard Ortiz is?

10       A.    I plead the Fifth Amendment.

11       Q.    On August 16, 2022, did you recognize any law

12   enforcement that was on the property at 6350 Clark Road?

13       A.    I plead the Fifth Amendment.

14       Q.    Okay.  On August 16, 2022, you were on the

15   property at 6350 Clark Road when you observed law

16   enforcement on the property and you ran away; correct?

17       A.    I plead the Fifth Amendment.

18       Q.    All right.  When you ran away from -- excuse me,

19   strike that.

20            On August 16, 2022, you recognized that law

21   enforcement was on the property; correct?

22       A.    I plead the Fifth Amendment.

23       Q.    Okay.  On August 16, 2022 when you were on the

24   property at 6350 Clark Road, you heard law enforcement tell

25   you to stop; correct?

Case 2:23-cv-02563-DJC-CKD    Document 11-4    Filed 07/25/25    Page 23 of 50

Xao Thao vs.
Xao Thao                                                        County of Siskiyou

1        A.   I plead the Fifth Amendment.

2        Q.   When you saw law enforcement on the property at

3    6350 Clark Road on August 16th, 2022 and you ran away, you

4    had a knife in your hand; correct?

5        A.   I plead the Fifth Amendment.

6        Q.   The same date and time and location, you were told

7    to drop the knife; correct?

8        A.   I plead the Fifth Amendment.

9        Q.   On the same date and time and location as you're

10   running away from officers, you attempted to climb over a

11   wire fence; correct?

12       A.   I plead the Fifth Amendment.

13       Q.   On the same date and time and location, you

14   resisted the law enforcement in detaining you; correct?

15       A.   I plead the Fifth Amendment.

16       Q.   On August 16, 2022 while you're on the property at

17   6350 Clark Road in Hornbrook, as officers were attempting to

18   physically detain you, you refused instructions to stop

19   resisting; correct?

20       A.   I plead the Fifth Amendment.

21       Q.   The -- As the officers were attempting to detain

22   you, you tucked both your arms underneath your body and

23   refused to place them behind your back; correct?

24       A.   I plead the Fifth Amendment.

25       Q.   At no time during your arrest as officers were

1    attempting to detain you or arrest you, did any officer

2    strike you or hit you; correct?

3        A.    No, there was at that time.

4        Q.    All right.  So that's a waiver of the Fifth

5    Amendment.  I'm going to go back and ask then all about this

6    interaction.  Tell me about the interaction, Mr. Thao, that

7    you had with law enforcement during your arrest.

8        A.    I didn't know who it was.  They came to my land, I

9    didn't know if they were thieves, criminals, law

10   enforcement, so I just left.  They chased me to the land

11   where it was bare.  They took me down and at that time they

12   just stepped on me.

13       Q.    So, I'm looking at the complaint filed in this

14   case, and it says that you were aware that officers were

15   coming onto the property.  So you knew who was chasing you;

16   correct?  You knew it was law enforcement?

17       A.    I plead the Fifth Amendment.

18       Q.    How many -- So, you said that somebody was in fact

19   chasing you.  So did you in fact run away from whoever was

20   on the property at some point?

21       A.    I didn't know who it was.  I was just scared, so I

22   just ran.

23       Q.    How many people were chasing you?

24       A.    There were two of them.

25       Q.    And as you're being chased, did you not have a

1   knife in your hand at some point?

2       A.   I plead the Fifth Amendment.

3       Q.   All right.  As you're being chased, did you

4   attempt to climb a fence?

5       A.   I plead the Fifth Amendment.

6       Q.   Okay.  When you say that you were stepped on, did

7   you actually see anyone step on you?

8       A.   Yes.  I saw it was like two eyes, there was one

9   person, he took me down.  And the other one, he came and

10  stepped on my neck and then kicked me.

11      Q.   When you say "one person took me down", how was

12  that person dressed?

13      A.   I plead the Fifth Amendment.

14      Q.   So these people that chased you and took you down

15  and kicked you, they were not law enforcement; is that your

16  story?

17      A.   I plead the Fifth Amendment.

18      Q.   Okay.  What position were you in when you were

19  kicked?

20      A.   They pushed me to the ground.  My face was down.

21  I was -- you know, I had dirt all over me and that's when

22  they, you know, got on top of me.

23      Q.   Where were you kicked?

24      A.   They kicked both my thigh -- they stepped on both

25  my thighs, kicked my --

Case 2:23-cv-02563-DJC-CKD    Document 11-4    Filed 07/25/25    Page 26 of 50

Xao Thao vs.
Xao Thao                                                     County of Siskiyou

1          THE INTERPRETER:  I'm sorry, the interpreter, let me

2    just clarify with him again.

3               (Interpreter and witness conversing in Hmong.)

4          THE WITNESS:  Actually, they kicked both my thighs,

5    stepped on my neck and pushed my face face down to the

6    ground.

7    BY MR. WHITEFLEET:

8          Q.   How do you know you were stepped on your neck if

9    you were face down on the ground?

10         A.   How could I not know?  Somebody came around me,

11   took me down to the ground.  The other person had huge feet,

12   huge shoes, stepped on my neck.  The shoe was on my face.

13         Q.   How long was this shoe on your neck or face?

14         A.   Around maybe two to three minutes there.

15         Q.   And what was happening during this two to three

16   minutes?

17         A.   I plead the Fifth Amendment.

18         Q.   Did you hear anything that these people were

19   saying that supposedly took you down or kicked you?

20         A.   I plead the Fifth Amendment.

21         Q.   Did you say anything to these people that were

22   taking you down or kicking you or putting their shoe on your

23   neck or face?

24         A.   I plead the Fifth Amendment.

25         Q.   Did you ever plead for officers to release you?

1    A.   Of course.  I told them to get off of me when they

2  were stepping on my neck.  I was just wore out, hurt, and so

3  I was scared that they were -- I was scared that they were

4  going to do to me what they did to George Floyd, so I wanted

5  them to stop.

6    Q.   So at some point did you recognize that the --

7  that somebody had taken you down to the ground were in fact

8  law enforcement?

9    A.   I plead the Fifth Amendment.

10    Q.   As you're being taken down to the ground by

11  whoever, did you try to put your hands in your pockets to

12  take out your cell phone?

13    A.   I plead the Fifth Amendment.

14    Q.   At this point, can you identify any person that

15  supposedly took you to the ground?

16    A.   I plead the Fifth Amendment.

17    Q.   You ran away from law enforcement because you knew

18  there was marijuana, illegal marijuana, being grown on the

19  property; correct?

20    A.   I plead the Fifth Amendment.

21    Q.   Can you identify the person that kicked you?  Was

22  that even law enforcement?

23    A.   I plead the Fifth Amendment.

24    Q.   Can you identify any person who stepped on your

25  neck or your face?

Case 2:23-cv-02563-DJC-CKD   Document 11-4   Filed 07/25/25   Page 28 of 50

Xao Thao vs.
County of Siskiyou
Xao Thao

1      A.   I plead the Fifth Amendment.

2      Q.   You were put in handcuffs, correct, on

3   August 16th, 2022?

4      A.   I plead the Fifth Amendment.

5      Q.   You were interviewed by a deputy on the property

6   right after your arrest; correct?

7      A.   I plead the Fifth Amendment.

8      Q.   Did you ever tell a medical provider that you

9   struck your head while going to the ground?

10     A.   I plead the Fifth Amendment.

11     Q.   On -- let's see.  When's the last time you went to

12   Elica Health Centers for any reason?

13     A.   I don't remember.

14     Q.   Can you estimate for me?

15     A.   Maybe it's been about a year or so now.

16     Q.   Did you ever tell health providers that on

17   August 16th, 2022, you were pulled over and arrested?

18     A.   I plead the Fifth Amendment.

19     Q.   Isn't it true that you told a health care provider

20   that the officers on the property on August 16th, 2022 were

21   wearing a green suit?

22     A.   I plead the Fifth Amendment.

23     Q.   Isn't it true that on August 24, 2023, you told

24   health care providers at Elica Health Centers that you ran

25   and jumped over your fence?

Xao Thao

1        THE INTERPRETER:  As the interpreter, I just need to
2    clarify.  August 24th, 2023?
3        MR. WHITEFLEET:  August 24, 2023.
4        THE INTERPRETER:  Okay, great.
5            (Question interpreted)
6        THE WITNESS:  I plead the Fifth Amendment.
7    BY MR. WHITEFLEET:
8        Q.   Isn't it true that on October 4th, 2022 you told
9    medical providers at Elica Health Centers that you were
10   arrested by Yreka Police?
11       A.   I plead the Fifth Amendment.
12       Q.   Are you aware of any other property owners in
13   Siskiyou County that are Hmong that were growing marijuana
14   and had search warrants executed on the property?
15       A.   I plead the Fifth Amendment.
16       Q.   Are you aware of any other Hmong individuals that
17   have been subjected to excessive force during arrest?
18       A.   I don't know, but I've heard of it.
19       Q.   What have you heard?
20       A.   I've heard that they came and took the Hmongs, you
21   know, the Hmong or the people who had marijuana, cut their
22   marijuana and arrest them.
23       Q.   And do you have any names or property addresses
24   that those things occurred?
25       A.   I've only heard, I don't know.

**Page 25**

Case 2:23-cv-02563-DJC-CKD    Document 11-4    Filed 07/25/25    Page 30 of 50

Xao Thao vs.
Xao Thao                                                            County of Siskiyou

1      Q.   Do you have any names of any other Hmong property

2   owners or individuals who were arrested arising out of

3   growing marijuana?

4      A.   I plead the Fifth Amendment.

5      Q.   Isn't it true on August 16, 2022 while you were at

6   6350 Clark Road, you heard law enforcement announce

7   themselves as police several times?

8      A.   I plead the Fifth Amendment.

9      Q.   Have you ever spoken with your wife about the

10  incident on August 16, 2022?

11     A.   Of course I spoke to her.  They arrested both of

12  us.

13     Q.   So did your wife ever tell you she observed you

14  being arrested?

15     A.   I plead the Fifth Amendment.

16     Q.   So that's either a yes or no.

17     A.   Of course.

18     Q.   So your wife did tell you she observed you being

19  arrested?

20     A.   Yes, of course.  She saw them kick me.

21     MR. WILLIAMS:  I'm going to object based on hearsay

22  also.

23  BY MR. WHITEFLEET:

24     Q.   Did you ever complain to any medical provider

25  that you were kicked in any interaction with law

1    enforcement?

2        A.   I plead the Fifth Amendment.

3        MR. WHITEFLEET:  All right.  Let's go off the record

4    for -- give me about ten minutes.

5        MR. WILLIAMS:  Okay.

6        THE INTERPRETER:  Okay.

7        MR. WHITEFLEET:  Let's come back at 11:30.

8        THE WITNESS:  Okay.

9            (An eleven-minute break was taken at 11:22 a.m.)

10   BY MR. WHITEFLEET:

11       Q.   Back on the record.

12            After the break, Mr. Thao, is there any testimony

13   you would like to change or modify?

14       A.   No, there's nothing.

15       Q.   On August 16, 2022, did you ever observe an

16   officer with a shaved head and a black mustache?

17       A.   I plead the Fifth Amendment.

18       Q.   On August 16, 2022, did you ever observe an

19   officer that was blond with a mustache and a beard?

20       A.   I plead the Fifth Amendment.

21       Q.   After your release from -- well, let me strike

22   that.

23            How long were you in jail August 16, 2022?

24       A.   Maybe like two hours or so.

25       Q.   Okay.  And did you go straight from there to the

Xao Thao

1    emergency room at Fairchild Medical Center?

2        A.    That's correct, because my neck was swollen and it

3    was difficult to breathe.

4        Q.    **Were you given any medications at Fairchild**

5    **Medical Center?**

6        A.    Yes, they did.

7        Q.    **What did they give you?**

8        A.    I don't remember the medication.

9        Q.    **Were you given any prescriptions from Fairchild**

10   **Medical Center?**

11       A.    I don't remember.

12       Q.    **Do you remember the results of any CT scans taken**

13   **at Fairchild Medical Center?**

14       THE INTERPRETER:  And as the interpreter, I need to

15   clarify before I interpret.

16           (Interpreter and witness conversing in Hmong.)

17       THE WITNESS:  So the doctor told me that there was a

18   bruise on my head so for me not to eat, to give it some time

19   so that it wouldn't get worse.

20   BY MR. WHITEFLEET:

21       Q.    **Where on your head?**

22       A.    I didn't see the CT scan, so I just know that it

23   was on my head somewhere.

24       Q.    **You're saying that the CT scan indicated a bruise?**

25       MR. WILLIAMS:  Don't answer if you don't know.

1      THE WITNESS:  I didn't see it, so I don't know.  I just

2   know that's what the doctor just told me.

3   BY MR. WHITEFLEET:

4      **Q.   How many times did you go to Elica Health Centers**

5   **for any claimed injuries that you attribute to the**

6   **August 22 --**

7      THE INTERPRETER:  Can the interpreter --

8   BY MR. WHITEFLEET:

9      **Q.   Sorry, August 16, 2022.**

10      A.   I don't remember exactly how many times, but at

11   least two or three times.

12      **Q.   Were you provided any medications at Elica Health**

13   **Centers to address any injuries you attributed to the**

14   **August 16, 2022 incident?**

15      A.   Yes.  They did give some medications, but I don't

16   know the names of the medications.  I don't know how to say

17   them.

18      **Q.   What was your understanding that the medications**

19   **were designed to assist with?**

20      THE INTERPRETER:  As the interpreter, I apologize, I

21   just need to clarify with the patient (sic).

22           (Interpreter and witness conversing in Hmong.)

23      THE WITNESS:  The medication was to help with my injury

24   and in case I had any type of like -- to prevent any kind of

25   brain injury.

1    BY MR. WHITEFLEET:

2        **Q.    What injury were you seen for at Elica the two to**

3    **three times that you obtained medication for?**

4        A.    I don't remember.  The doctor said something, but

5    I don't remember.

6        **Q.    What injuries were you complaining of the two to**

7    **three times that you went to Elica as arising out of the**

8    **August 16, 2022 incident?**

9        A.    You know, when I went to the Fairchild Medical

10   Center, they told me to follow up with my doctor.  And so

11   when I went to follow up with my doctor, I just told him the

12   truth about what happened to me, that I was kicked and

13   stepped on.  So he just followed up according to that.

14       **Q.    All right.  Outside any CT scan, was there any**

15   **bruising anywhere on your body from any of the kicks or**

16   **being stepped on your neck?**

17       A.    Yes.  My neck was swollen.  My face was bruised

18   and purple.  The nurse even took pictures of it.

19       **Q.    How long did this swelling and bruising last?**

20       A.    At least a week or so.

21       **Q.    Was there bruising anywhere else?**

22       A.    Just the face and neck.

23       **Q.    No bruising on your sides?**

24       A.    You know, at the time it was just hurting,

25   hurting, but I don't recall like even paying attention.

Xao Thao

1     Q.   Did you ever take any pictures of any bruising or

2   any injuries?

3     THE INTERPRETER:  As the interpreter, I just need to

4   clarify.

5          (Interpreter and witness conversing in Hmong.)

6     THE WITNESS:  The nurse took pictures and I also took

7   pictures.

8   BY MR. WHITEFLEET:

9     Q.   And the pictures that you took, do you still have

10  them?

11    A.   I really don't know if I can retrieve them, but

12  I'll see if I can.

13    MR. WHITEFLEET:  Mr. Williams, I'd note that I don't

14  believe any photographs were produced in this case.

15  BY MR. WHITEFLEET:

16    Q.   All right.  Mr. Thao, are you currently taking any

17  medications for any injuries that you attribute to

18  August 16, 2022?

19    A.   Right now, no, I'm not taking any medications.

20  However, when it comes to the pictures, yes, I have a friend

21  who took pictures, but I don't know if they still have them.

22    Q.   Who is the friend?

23    A.   It's like a relative.

24    Q.   What's their name?

25    A.   I'm not going to give you their name.

**Page 31**

1    MR. WHITEFLEET:  All right.  Mr. Williams, I'm going

2    to -- since no pictures have been produced so far and your

3    client's refusing to provide information about who has the

4    pictures --

5    MR. WILLIAMS:  I --

6    MR. WHITEFLEET:  -- I'll move to exclude anything

7    that's not been produced.

8    MR. WILLIAMS:  I would like to talk to my client about

9    that last response, if I could.

10    MR. WHITEFLEET:  Okay.  We can go off record.

11        (A two-minute break was taken at 11:48 a.m.)

12    MR. WHITEFLEET:  Back on the record?

13    MR. WILLIAMS:  Yes.

14    MR. WHITEFLEET:  All right.  Following the break, I

15    understand your client is going to answer the question?

16    MR. WILLIAMS:  Yes.

17    THE WITNESS:  Sure.

18    BY MR. WHITEFLEET:

19    **Q.   Go ahead.**

20    A.   When I was at the hospital, I had some people

21    visit me.  I know that they took pictures, but I can't tell

22    you their names.  But if I needed to go and get those

23    pictures for you, then I can.

24    **Q.   As you sit here today, do you know any -- the name**

25    **of anybody who actually took pictures of any injuries?**

1      A.   There were two.  One of them was Peter.  The other

2   one is Yang.

3      **Q.   And do either one of these people have full names?**

4      A.   No, I can only tell you that.

5      **Q.   And how are Peter and Yang related to you?**

6      A.   Peter is a relative.  Yang is a friend.

7      **Q.   You don't know Peter's last name?**

8      A.   No, I can't say here.

9      **Q.   You can't or you won't?**

10     A.   I just can't say it.

11     **Q.   Why not?**

12     A.   I don't know how it's going to be in the future,

13   so I just can't tell you.

14     MR. WHITEFLEET:  Okay.  So same, same thing,

15   Mr. Williams.  It sounds like he's refusing to provide the

16   full name of anybody that has possession of photographs.

17   And so with that, you know, even though I think it's too

18   late to produce anything, you know, your client's refusal to

19   provide the identity of anybody that's in possession of

20   documents in the case I think is grounds to exclude them.

21     THE WITNESS:  That's not right.  That's not right.  No,

22   you can't do that because when I was at the hospital, you

23   know, they have pictures.  The nurse has pictures.  The

24   nurse who had visited me has pictures.  You can't do that.

25     MR. WHITEFLEET:  I don't have any more questions.

1    MR. WILLIAMS:  I didn't hear that last part.

2    MR. WHITEFLEET:  I'm done.

3    MR. WILLIAMS:  Okay.

4    THE WITNESS:  That's fine.  Thank you for you two.

5    MR. WILLIAMS:  All right.

6    MR. WHITEFLEET:  Off the record?

7    MR. WILLIAMS:  Yes.

8         (Whereupon, the deposition was concluded
           at 11:56 a.m.)

9                        *    *    *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    INTERPRETER'S CERTIFICATION

2

3    I,_____, hereby certify

4    that I am fluent in the English/Hmong language, that I have

5    truly and accurately translated from English into Hmong the

6    deposition taken on February 20, 2025 to the deponent, XAO

7    THAO, and have accurately written on said transcript the

8    corrections per the witness's request to the best of my

9    ability.

10    I declare, under penalty of perjury, that the

11    foregoing is true and correct.

12    DATED:  This_____day of_____,20___,

13    at_____.

14

15    _____

16                    Hmong Interpreter

17

18

19

20

21

22

23

24

25

1          I, the undersigned, a Certified Shorthand Reporter

2    of the State of California, do hereby certify:

3          That the foregoing proceedings were taken before

4    me at the time and place herein set forth; that any

5    witnesses in the foregoing proceedings, prior to testifying,

6    were duly sworn; that a record of the proceedings was made

7    by me using machine shorthand, which was thereafter

8    transcribed under my direction; that the foregoing

9    transcript is a true record of the testimony given.

10         Further, that if the foregoing pertains to the

11   original transcript of a deposition in a federal case,

12   before completion of the proceedings, review of the

13   transcript {X} was { } was not requested.

14

15         I further certify I am neither financially

16   interested in the action nor a relative or employee of any

17   attorney or party to this action.

18         IN WITNESS WHEREOF, I have this date subscribed my

19   name.

20

21   Dated:  March 2, 2025

22

23   _____

     Doreen Furuta Landes

24   RPR, CSR No. 5778
     State of California

25

**Page 36**

EXHIBIT B

**PORTER | SCOTT**
A PROFESSIONAL CORPORATION
John R. Whitefleet, SBN 213301
jwhitefleet@porterscott.com
2180 Harvard Street, Suite 500
Sacramento, California 95815
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendant COUNTY OF SISKIYOU

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XAO THAO, | Case No.  2:23-cv-02563-DJC-CKD |
| Plaintiffs, | **DEFENDANT COUNTY OF SISKIYOU'S REQUESTS FOR ADMISSIONS TO PLAINTIFF** |
| v. | |
| COUNTY OF SISKIYOU, and DOES 1, THROUGH 50, | |
| Defendants. | Complaint Filed:  11/06/2023 |
| _____/ | |

PROPOUNDING PARTY:    Defendant COUNTY OF SISKIYOU

RESPONDING PARTY:    Plaintiff XAO THAO

SET NUMBER:        One

Defendant requests that you answer, under oath and in writing pursuant to Federal Rules of Civil Procedure, Rule 36, the following Requests for Admission, Set One, within thirty (30) days from service of these Requests for Admission, Set One.

## DEFINITIONS

1.    "YOU" and "YOUR" means Plaintiff XAO THAO.

2.    "COMPLAINT" means the operative Complaint in the above referenced matter.

3.    "INCIDENT" refers to the matters that occurred on August 16, 2022 as more fully alleged in the COMPLAINT.

**REQUESTS FOR ADMISSION, SET ONE**

**REQUEST FOR ADMISSION. 1:**

Admit that, at the time of the INCIDENT, YOU did not own the property commonly referred to as 6350 Clark Road, Hornbrook CA 96044.

**REQUEST FOR ADMISSION NO. 2:**

Admit that, at the time of the INCIDENT, the property commonly referred to as 6350 Clark Road, Hornbrook CA 96044 was owned by Tria Thao.

**REQUEST FOR ADMISSION NO. 3:**

Admit that you are related to Tria Thao.

**REQUEST FOR ADMISSION NO. 4:**

Admit that, at the time of the INCIDENT, the property known as Lot 705 (see attached map), is owned by Xiong Teng.

**REQUEST FOR ADMISSION NO. 5:**

Admit that, at the time of the INCIDENT, you understood that your wife had permission from the owner of property known as Lot 705 (see attached map), to cultivate marijuana on the property.

**REQUEST FOR ADMISSION NO. 6:**

Admit that, at the time of the INCIDENT, the property known as Lot 706 (see attached map), is owned by Tim Thao.

**REQUEST FOR ADMISSION NO. 7:**

Admit that Tim Thao is your son.

**REQUEST FOR ADMISSION NO. 8:**

Admit that, at the time of the INCIDENT, you had permission from the owner of property known as Lot 706 (see attached map), to cultivate marijuana on the property.

**REQUEST FOR ADMISSION NO. 9:**

Admit that, at the time of the INCIDENT, your wife was cultivating marijuana on property

known as Lot 705 (see attached map).

**REQUEST FOR ADMISSION NO. 10:**

Admit that, at the time of the INCIDENT, you were cultivating marijuana on property known as Lot 706 (see attached map).

**REQUEST FOR ADMISSION NO. 11:**

Admit that, at the time of the INCIDENT, there were over 500 marijuana plants growing on property known as Lot 706 (see attached map).

**REQUEST FOR ADMISSION NO. 12:**

Admit that, prior to your arrest at the time of the INCIDENT, you were physically present on either property known as Lot 705 (see attached map).

**REQUEST FOR ADMISSION NO. 13:**

Admit that, at the time of the INCIDENT, you were physically detained on property that was not 6350 Clark Road, Hornbrook CA 96044.

**REQUEST FOR ADMISSION NO. 14:**

Admit that, at the time of the INCIDENT, you attempted to flee from law enforcement.

**REQUEST FOR ADMISSION NO. 15:**

Admit that, immediately prior to your arrest, you knew law enforcement told you to stop.

**REQUEST FOR ADMISSION NO. 16:**

Admit that, at the time of the INCIDENT and prior to being physically detained, you had a knife in your possession.

**REQUEST FOR ADMISSION NO. 17:**

Admit that, at the time of the INCIDENT, and prior to being physically detained, you attempted to climb over a fence.

**REQUEST FOR ADMISSION NO. 18:**

Admit that, at the time of the INCIDENT, and prior to being physically detained, you disobeyed an order to stop.

**REQUEST FOR ADMISSION NO. 19:**

Admit that you are being prosecuted for violation(s) of Health and Safety Code 11358(d)(3) as

3

arising from the INCIDENT, in the matter of <u>People v Thao</u>, Siskiyou County Superior Court Case No. 24CF02012.

**REQUEST FOR ADMISSION NO. 20:**

Admit that, at the time of the INCIDENT, you resisted being physically detained by law enforcement.

**REQUEST FOR ADMISSION NO. 21:**

Admit that, at the moment you were physically detained during the INCIDENT, you were not situated on real property for which you had any privacy interest.

Dated:  June 28, 2024                           PORTER SCOTT
                                                A PROFESSIONAL CORPORATION

                                                By <u>/s/ John R. Whitefleet</u>
                                                    John R. Whitefleet
                                                    Attorneys for Defendant

DEFENDANT COUNTY OF SISKIYOU'S REQUESTS FOR ADMISSIONS TO PLAINTIFF

4855-1343-5085, v. 1

*Xao Thao v. County of Siskiyou, et al.*

**U.S.D.C. Eastern District of California - Case No. 2:23-cv-02563-DJC-CKD**

### DECLARATION OF SERVICE

I am a resident of the United States and of the County, of Sacramento, California. I am over the age of eighteen years and not a party to the within above-entitled action. My business address is 2180 Harvard Street, Suite 500, Sacramento, California.

I am familiar with this Company's practice whereby the mail, after being placed in a designated area, is given the appropriate postage and is deposited in a U.S. mailbox in the City of Sacramento, California, after the close of the day's business.

That on the date below, I served the following: **DEFENDANT COUNTY OF SISKIYOU'S REQUESTS FOR ADMISSIONS TO PLAINTIFF** on all parties in the said action as addressed below by causing a true copy thereof to be served:

| | |
|---|---|
| | **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
| | **BY PERSONAL SERVICE:** I caused such document to be personally delivered to the person(s) addressed below. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening. |
| | **BY OVERNIGHT DELIVERY:** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) listed below. I placed the envelope or package for collection and overnight delivery at my office or a regularly utilized drop box of the overnight delivery carrier. |
| | **BY FAX TRANSMISSION:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached |
| X | **BY ELECTRONIC SERVICE**: Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification address listed below. |

Addressed as follow:

Samuel C. Williams, Esq.
Samuel C. Williams, Attorney at Law, Inc.
1263 California Street
Redding, CA 96001
samuel.crispan.williams@gmail.com
*Attorney for Plaintiff*

---

5

4855-1343-5085, v. 1

I declare under penalty of perjury that the foregoing is true and correct.  Executed at Sacramento, California, on June 28, 2024.

*Carol Olive*

_____

Carol Olive

6

DEFENDANT COUNTY OF SISKIYOU'S REQUESTS FOR ADMISSIONS TO PLAINTIFF

4855-1343-5085, v. 1

# EXHIBIT C

**From:**      John R. Whitefleet
**To:**        Samuel Williams
**Subject:**   RE: Thao v. County of Siskiyou
**Date:**      Monday, August 12, 2024 6:26:38 PM

My apologies, the below applies only to the Interrogatories and requests for production of documents.   In accordance with FRCP Rule 35, the RFAS are deemed admitted.

John

---

**From:** John R. Whitefleet
**Sent:** Monday, August 12, 2024 6:25 PM
**To:** Samuel Williams <samuel.crispan.williams@gmail.com>
**Subject:** FW: Thao v. County of Siskiyou

Mr. Williams:

The below discovery was served on June 28, 2024, responses were due by July 29, 2024.  To date, we have not received any responses.

In accordance with the Federal Rules of Civil Procedure Rules 33 and 34, which provides that discovery requests must be responded to within the time prescribed, the failure to object to discovery within the time required constitutes a waiver of any objection.  Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 (9th Cir. 1992).  This is true even of an objection that the information sought is privileged. Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981).

Please provide responses without objection by August 20, 2024.

Regards,

John

---

**From:** Carol Olive <colive@porterscott.com>
**Sent:** Friday, June 28, 2024 12:58 PM
**To:** samuel.crispan.williams@gmail.com
**Cc:** John R. Whitefleet <jwhitefleet@porterscott.com>
**Subject:** Thao v. County of Siskiyou

Dear Counsel:

Please find attached the following discovery propounded on Plaintiff:

1. Defendant County of Siskiyou's RPD#1 to Plaintiff
2. Defendant County of Siskiyou's RFA#1 to Plaintiff
3. Defendant County of Siskiyou's SI#1 to Plaintiff



**Carol Olive**
Legal Secretary to John R. Whitefleet
and Jennifer L. Thompson
2180 Harvard Street, Suite 500, Sacramento, CA 95815
T| 916. 929. 1481 x 121  F| 916. 927.3706
www.porterscott.com

**CONFIDENTIALITY NOTICE:** This email and any attachments are confidential and privileged.  Any inadvertent disclosure shall not waive the attorney-client or work product privileges.  If you have received this email in error, please notify the sender immediately and delete all copies of the email and any attachments.