**P O R T E R  |  S C O T T**
A PROFESSIONAL CORPORATION
Carl L. Fessenden, SBN 161494
cfessenden@porterscott.com
John R. Whitefleet, SBN 213301
jwhitefleet@porterscott.com
Zachary J. Ayre, SBN 356392
zayre@porterscott.com
2180 Harvard Street, Suite 500
Sacramento, California 95815
TEL: 916.929.1481
FAX: 916.927.3706

Attorneys for Defendant COUNTY OF SISKIYOU
*(Exempt from Filing Fees Pursuant to Government Code § 6103)*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XAO THAO, | Case No.  2:23-cv-02563-DJC-CKD |
| Plaintiffs, | **DECLARATION OF SAMUEL KUBOWITZ IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| COUNTY OF SISKIYOU, and DOES 1, THROUGH 50, | Date: September 18, 2025 |
| | Time: 1:30 P.M. |
| Defendants. | Courtroom: 7, 14th Floor |
| _____/ | Complaint Filed:  11/06/2023 |

I, Samuel Kubowitz, declare:

1. I am employed with the County of Siskiyou as a Sheriff's Sergeant with the Siskiyou Sheriff's Department. ("Sheriff's Department")  The facts stated in this declaration are within my personal knowledge and if called to testify, I could and would competently testify to them.

/ / /

/ / /

2.  On 7/25/2022, as part of the Sheriff's Department's Marijuana Eradication Team, I conducted aerial surveillance in the area of Klamath River County Estates and took several photos of greenhouses, plants, as well as a GPS location of the properties for later reference.

3.  On 8/8/2022, I reviewed the photos and identified hundreds of marijuana plants being cultivated. Using Parcel Quest, I identified one property as APN 104-320-100, and the other as APN: 104-320-090.

4.  I obtained search warrants for both properties. A true and correct copy of both warrants are attached hereto as Exhibit 1 and 2.

5.  On 8/16/2022, the search warrants obtained were executed at both properties.

6.  When the warrants were executed, the Sheriff's Department had in effect Policy No. 300, which sets for that any force used should be reasonable under the circumstances. A true and correct copy is attached as Exhibit 3 to this declaration.

7.  When the warrants were executed, the Sheriff's Department had in effect Policy No. 312, which sets forth that valid warrants were required for a search. A true and correct copy is attached as Exhibit 4 to this declaration.

8.  When the warrants were executed, the Sheriff's Department had in effect Policy 401, which sets forth that bias-based policing – defined as an inappropriate reliance on actual or perceived characteristics such as race, ethnicity, national origin, religion, sex, sexual orientation, gender identity or expression, economic status, age, cultural group, disability, or affiliation with any non-criminal group (protected characteristics) as the basis for providing differing law enforcement service or enforcement – was strictly prohibited. A true and correct copy is attached as Exhibit 5 to this declaration.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. This declaration was executed on this July 24, 2025, in <u>Yreka</u>, California.

/s/ _____
Samuel Kubowitz

**DECLARATION OF SAMUEL KUBOWITZ IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

EXHIBIT 1

Search Warrant No. 2022-195

# SUPERIOR COURT OF CALIFORNIA
## County of SISKIYOU

| Search Warrant |



## The People of the State of California

## To Any Peace Officer in Siskiyou County

Sgt. Sam Kubowitz of the North State Major Investigation Team (NSMIT), swears under oath that the facts expressed by him in this Search Warrant, and in the attached and incorporated statement of probable cause, are true and that based thereon he/she has probable cause to believe and does believe that the property and/or person described below is lawfully seizable pursuant to Penal Code Section 1524, as indicated below, and is now located at the locations set forth below. Wherefore, affiant requests that this Search Warrant be issued.

Executed at Yreka, California

_____, Date 8/9/2022 at 0940 (A.M.)/ P.M.

(Signature of Affiant)

**NIGHT SEARCH REQUESTED: YES [ ]   NO [X]** - Justification on page(s)
**HOBBS Sealing Requested:      YES [ ]   NO [X]** - Justification on page(s)

[ ]  it was stolen or embezzled;
[ ]  it was used as the means of committing a felony;
[X]  it is possessed by a person with the intent to use it as a means of committing a public offense, or is possessed by another to whom he or she may have delivered it for the purpose of concealing it or preventing its discovery;
[ ]  it tends to show that a felony has been committed, or that a particular person has committed a felony;
[ ]  it tends to show that sexual exploitation of a child, in violation of *Penal Code* §311.3, or depiction of sexual conduct of a person under the age of 18 years, in violation of *Penal Code* §311.11, has occurred or is occurring;
[ ]  there is a warrant for the person's arrest.

**YOU ARE THEREFORE COMMANDED TO SEARCH:**
See attachment "A".
**FOR THE FOLLOWING PROPERTY:**
See attachment "B".
**AND TO SEIZE IT IF FOUND** and bring it forthwith before me, or this court, at the courthouse of this court. This Search Warrant and incorporated Affidavit was sworn to as true and subscribed before me. Wherefore, I find probable cause for the issuance of this Search Warrant and do issue it.

_____, Date 8-9-22 at 9:38 (A.M.)/ P.M.

(Signature of Magistrate)

Karen L. Dixon

(Printed Name of Magistrate)

Be advised that pursuant to California Penal Code sections 1539 and 1540, you may file a written motion in the court of the above-mentioned judge who issued the warrant, seeking return of the property seized pursuant to this warrant.

For further information concerning this search warrant, contact the officer whose name appears on the warrant, Sgt. Sam Kubowitz at (530) 841-2900.

ATTACHMENT "A"

**YOU ARE THEREFORE COMMANDED TO SEARCH:**

**[X] Locations:**



**Parcel # (APN):**  104-320-100-000
**Parcel Status:**  ACTIVE
**Owner Name:**  THAO TIM
**Mailing Address:** 2559 ALTOS AVENUE SACRAMENTO CA 95815

**Aerial Photo 7/25/2022**



The subject property is located in Siskiyou County. To reach the subject property from the intersection of Ager Beswick Rd and Desavado Rd., you travel north for approximately 0.97 miles. Turn left onto Whitepine Rd. for approximately 1.95 miles. Turn right onto Clark Rd for approximately .61 miles. There is no driveway for this subject property and it will be on the east side of Clark Rd. The approximate GPS Coordinate of **N41° 53.280, W122° 27.309** will be the farthest west greenhouse.

I am requesting to search all buildings, residences, garages, trailers/RV, sheds, outbuilding including tents, self-constructed structures, basements, attics, storage spaces, appurtenant buildings, the surrounding grounds, and any containers locked or unlocked thereon which could contain any of the items sought.

The subject property is a 2.8 acre parcel in Siskiyou County. The subject property has two visible greenhouses structures you can see from our aerial photos.

**[X]    Person:**

Any person found on the property at the time of search warrant service.

**[X]    Vehicles:**

Any vehicle found on the property at the time of search warrant service.

**ATTACHMENT "B"**

**[X]    For the following Property:**

**MARIJUANA, CANNABIS, AND/OR CONCENTRATED CANNABIS**, in all forms: including but not limited to marijuana steams, leaves, stalks, seeds, and cola. Scissors, scales, measuring and weighing devices frequently used to prepare marijuana for commercial distribution; garbage bags, zip-lock bags, paper bags, glass containers, and similar containers commonly used to package and store marijuana.

**CULTIVATION AIDS AND EQUIPMENT:** including but not limited to artificial lighting equipment such as fluorescent lamps, metal halide lamps, high pressure sodium lamps, ballasts, reflective light hoods, and electric motors and track systems; fans; carbon dioxide generators; reflective materials; PH testers and balancers; ionizers; electric timers; rodent traps; plastic and wire mesh; plastic and ceramic pots; growing medium and potting soil; fertilizers; irrigation equipment, including PCV pipe and hose, drip lines, emitters, hand watering wands, and water holding tanks; diesel and/or gas generators; and any other object maintained, intended, or designed for to assist or aid in the cultivation of marijuana.

**CONTAINERS** in which any of the items sought could be found: including but not limited to safes, vehicles, outbuildings, sheds, attics, crawl spaces, and garbage or trash containers.

**INDICIA:** including but not limited to items related to the sales and/or trafficking of controlled substances such as ledgers; controlled substance customer lists; supplier lists; correspondence; notations; logs; receipts; journals; books; papers notating the price, quantity, or quality of controlled substances; papers notating the person(s) or the location(s) where controlled substances were obtained, transferred, sold, or distributed; papers indicating amounts due or amounts owed from transactions of controlled substances; any other form of "pay and owe" records; money sheets reflecting or accounting for monies and/or controlled substances received, dispersed, or exchanged; and to include monies obtained from sales or transactions of controlled substances. Also, items showing evidence of dominion, control, or ownership of the locations, vehicles, storage areas, safes, lock boxes, or containers to be searched: including but not limited to keys; photographs; current and cancelled mail and mail envelopes; other items of

Page #:    3

correspondence such as utility bills and telephone bills; rental agreements; grant deeds; legal documents; escrow documents; airline tickets and other tickets of identification for other forms of public transportation; personalized luggage or luggage tags; forms of official identification and exemplars of original handwriting including drivers licenses, social security cards, passports, resident alien cards, food stamps and food stamp identification cards, signature cards, usage cards and applications, insurance documentation, Medi-cal cards or stickers, medical records bills, prescriptions and prescription bottles; articles of personal clothing of suspect(s) or co-conspirator(s); articles of personal property such as telephone books, address books, notebooks, and papers; other items reflecting the names, addresses, or telephone numbers of associates possibly involved in controlled substance organizations, which tend to establish the existence of a conspiracy to import, transport, distribute, or sell controlled substances.

**FIREARMS:** including but not limited to weapons commonly used by individuals to facilitate trafficking of controlled substances, to protect caches of controlled substances, or to be offensively used against police officers serving a warrant; such as assault rifles, hunting rifles, shotguns, handguns, ammunition, and illegal or combat style knives.

**FINANCIAL DOCUMENTATION:** to include any and all financial records to assist in facilitating an investigation of the laundering of illicitly obtained monies or other forms of assets acquired through the sales, trafficking, or distribution of controlled substances, and the subsequent evasion of governmental taxes: including but not limited to federal and state tax returns; employment papers; banking records - including pass books, account information, canceled checks, deposit records, income and expenditure records, property acquisition records, money market and/or similar account records, and records of stocks and/or bonds exchanged; credit card records; records reflecting the rental of safe deposit boxes; safe deposit box keys; records reflecting the purchase, sale, lease, or rental of vehicles, aircraft, or other vessels; and any other negotiable instruments.

**COMPUTERS AND ASSOCIATED SOFTWARE AND ACCESSORIES;** written documentation, whether typed or handwritten, including, but not limited to, computer manuals and instructions for the use of any computers and their accessories as well as documentation containing passwords.

All electronic data processing and storage devices, computers and computer systems, such as central processing units, internal and peripheral storage devices such as fixed disks, internal and external hard drives, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, dongles, encryption keys, personal data assistants (PDA's) or other memory storage devices; and any/all peripheral input/output devices such as keyboards, printers, video display monitors, optical readers and related communication devices such as modems, associated telephone sets, speed dialers, and/or other controlling devices, plotters, software to run programs, connecting cables and plugs, peripherals such as joysticks, mouse's, or other input devices, scanners, writing pads, manuals, connecting switches, telephones and telephone cables, and interface devices; system documentation, operating logs and documentation, software and instructional manuals. Computing or data processing software, stored on any type of medium such

as: hard disks, floppy disks, CD-R's, CD-RW's, DVD's, cassette tapes, or other permanent or transient storage medium.

Any records, whether stored on paper, on magnetic media such as tape, cassette, disk, diskette or on memory storage devices such as optical disks, programmable instruments such as telephones, "electronic calendar\address books" calculators, or any other storage media, together with indicia of use, ownership, possession, or control of such records.

Any written or computer communication in printed or stored medium such as E-Mail and Chat Logs whether in active files, deleted files or unallocated space on the hard drive, floppy drive or any data storage media.

Search of all of the above items is for files, data, images, software, operating systems, deleted files, altered files, system configurations, drive and disk configurations, date and time, and unallocated and slack space, for evidence of cultivation and possession for sales of marijuana.

With respect to computer systems and any items listed above found during the execution with this Search Warrant, the searching Peace Officers are authorized to seize and book said computer systems and any items listed above and transfer them to a Law Enforcement Agency location prior to commencing the search of the items. Furthermore, said search may continue beyond the ten-day period beginning upon issuance of this Search Warrant, to the extent necessary to complete the search on the computer systems and any items listed above.

**TELEPHONES/CELLULAR PHONES:** Police officers are directed to answer, record, monitor, note, and converse with callers who appear to be calling in regards to controlled substance trafficking or money laundering on any telephone or cellular phone within the location(s), vehicle(s), and/or person(s) to be searched without revealing the officers' identity.

Officers may seize and book cellular phones deemed relevant to the investigation to be examined at a later date with a separate search warrant. Officers are allowed to transfer them to a Law Enforcement Agency location prior to commencing the search of the items.

**WIRING:** to include all items used in the illegal diverting of power, including the components of the power meter used to read the power usage of the location(s) to be searched; and shall be allowed to seize the entire commercial (PG&E or other commercial electrical provider) power box and electrical bypass at the power meter.

**UNITED STATES CURRENCY:** All U.S. Currency that is seized and that might be subject to forfeiture under 11470 Et. Seq., and 11488 (b) of the California Health and Safety Code, be deposited into the asset forfeiture account, established by the Siskiyou County Sheriff's Office pending the outcome of forfeiture proceedings against said property. I request that such monies or property seized under the order of this search warrant, pursuant to Penal Code Section 1536, and which are determined to be proceeds of drug sales, or determined to have been intended to

be used to facilitate such drugs sales, be seized under the authority of Section 11470 and 11488 of the California Health and Safety Code, and therefore be released from evidence in the custody and control of the appropriate law enforcement agency pending adjudication of forfeiture proceedings. I further request that any seized monies and monetary instruments be placed into an interest bearing trust account of such appropriate law enforcement agency pending the adjudication of the forfeiture proceedings.

**OFFICERS SHALL BE ALLOWED TO EXAMINE** radios, cassette recorders, stereo equipment, televisions, cable access devices, and similar items for their serial numbers.

**OFFICERS SHALL BE ALLOWED TO BRING OTHER AGENCIES ONTO THE PROPERTY** to be searched, who have expertise in the area of building codes, unsafe wiring, fire hazards, and environmental health, I request that the court authorize the use of Federal Agency personnel to accompany the Peace Officers executing this Search Warrant for the purpose of assisting in the service and execution of this Search Warrant as provided for under California Penal Code Section 1530 and 1538. The Federal Agency personnel can also assist in the computer examinations of the seized items.

SPECIAL REQUEST(S): Allied agency assistance: I request that representatives from the **State Water Resources Control Board**, and/or the California Regional Water Quality Control Board, North Coast Region (collectively Water Boards) be allowed to inspect the location to be searched pursuant to Water Code sections 1051 and 13267 to determine if there are violations of the California Water Code, the Porter Cologne Water Quality Control Act (Cal. Wat. Code, § 13000 et seq.) and the Federal Clean Water Act (33 U.S.C. § 1251 et seq.). Such violations may include, but are not necessarily limited to: conditions of and/or threatened conditions of pollution or nuisance resulting from discharges of waste (as defined in Water Code § 13050, subdivision (d) to waters of the State and of the United States in violation of the Porter-Cologne Water Quality Control Act (Wat. Code § 13000 et seq.) and the Federal Water Pollution Control Act (33 U.S.C. § 1251 et seq.); and the diversion, use, and/or storage of water in violation of Water Code §§ 1052, subdivision (a), and 5101. Sources of Water Code § 13050, subdivision (d), waste are likely to include chemicals and/or hazardous wastes from garbage, pesticides, fertilizers, leachate, leaking fuel tanks or other storage containers, construction debris, and earthen materials from timberland conversion, stream dredging, in-stream dams, grading, road construction, and soil disturbance associated with marijuana cultivation.

I request that the scope of the Water Boards' inspection including entering upon and conducting a visual inspection of the entire Property and conducting and documenting such inspection by taking such samples and reviewing such writings and records that are kept and maintained on the Property as is necessary to determine compliance. The inspection may include: 1) entering the Property, observing the physical conditions of the Property, and any equipment located thereon and any operations, processes or other activities being conducted thereon, including, but not limited to, water diversions, graded areas, cultivated areas, road crossings, disposal areas, ponds, surface drainages, watercourses, material stockpiles, storage, and buildings located on the Property; 2) taking photographs and video of the physical conditions of the Property and any

equipment located thereon and any operations, processes or other activities being conducted thereon; 3) questioning of or conferring with persons present on the property privately to obtain information bearing on whether violations of the laws and regulations occurred; 4) the measurement of the pumping rate, if extant; the measurement of each reservoir's area, dam height, and diversion facilities, if extant; 5) collecting and analyzing samples of water, raw, graded, processed or stored materials, chemical, fuel, waste, and/or other stored or contained materials; 6) testing for water pollutants, including but not limited to sediment, fertilizers and pesticides, from any source whether mechanical, process, or natural; 7) inspection and duplicating any writings and records of spills or emergencies, business plans, contingency plans, or any other information authorized under California Water Code section 13267, subdivision (c).

"Staff from the **California Department of Food and Agriculture (CDFA)**, be allowed to inspect the location to be searched to determine if there are violations of the California Business and Professions Code and/or the California Code of Regulations related to state cannabis cultivation licenses.   Such violations may include but are not necessarily limited to operating and recordkeeping requirements and engaging in commercial cannabis cultivation without a license. (Bus. & Prof. Code § 26000-26231.2.)"

I request that the court authorize the use of Federal Agency personnel to accompany the Peace Officers executing this Search Warrant for the purpose of assisting in the service and execution of this Search Warrant as provided for under California Penal Code Section 1530 and 1538. The Federal Agency personnel can also assist in the computer examinations of the seized items.

I further request the court to authorize the use of person(s) who are Not Peace Officers to accompany the Peace Officers during the execution of this Search Warrant for the purpose of assisting them in the service of this Search Warrant as provided for under California Penal Code Section 1530.

I request that upon adjudication of the case(s) against all defendant(s) in any criminal action associated with this search warrant, including the resolution of any and all appeals, and the written concurrence of the Siskiyou County Office of District Attorney, the property be disposed of in accordance with the procedures set forth in California Penal Code, sections 1407 to 1422, without the necessity of a further court order pursuant to California Penal Code, section 1536.

## STATEMENT OF QUALIFICATIONS

Your affiant, Sam Kubowitz had been employed as a Deputy Sheriff with the County of Siskiyou since 2007 and I am currently assigned to the departments Marijuana Eradication Team. Prior to this, I was employed as a Police Officer for the City of Mt. Shasta from 2004 to 2007.

Your affiant attended the College of the Redwoods Basic Police Academy located in Eureka, Ca. Your affiant completed this training in June of 2004. As part of this training I completed 950 hours of training. Your affiant currently holds a Basic certificated issued to him by the Commission of Peace Officer Standards and Training (POST).

On April 3rd-7th 2006, your affiant completed a 40 hours course in Yreka, Ca, hosted by Cavenaugh & Associated. This training was in regards to all aspects of Driving Under the Influence enforcement.

On July 24th- 26th 2008, your affiant completed a 24 hours course to become a Drug and Alcohol Recognition expert.

On January 12th- 14th 2012, your affiant completed a 24 hours training course hosted by the California Narcotics Canine Association.

On November 26th- 28th 2012, your affiant completed a 24 hours training course hosted by the California Narcotics Officer Association.

On January 28th – February 1st 2019, your affiant completed a 40 hours course to become a Field Training Officer. On July 8th 2019, your affiant completed an 8-hour course in Crisis Intervention.

In October of 2021, I was promoted to the rank of Detective Sergeant and assigned to the Marijuana Eradication Team.

At this point in his career, your Affiant has assisted in no less than 100 marijuana related search warrants. In addition, your Affiant has worked several interdiction details on local highways in search of subjects who were using vehicles to traffic controlled substances to include marijuana within Siskiyou County. Your Affiant has been involved in many marijuana related investigations, both indoor and outdoor in many north state counties.

## STATEMENT OF PROBABLE CAUSE

On 7/25/2022, Lt. Persing and I conducted and aerial surveillance in the area of KRCE (Klamath River Country Estates). This subject property caught my attention by having two greenhouses on it. I noticed the outer black plastic was rolled to the middle of the farthest west greenhouse and the greenhouse to the east had its black plastic covering only half of the greenhouse. As we were flying around the subject property, Lt. Persing and I took several photos of the greenhouses and what was inside of them. Lt. Persing also took a GPS location of this subject property for later reference.

On 8/8/2022, I reviewed the photos from Lt. Persing and myself. The greenhouse on the west had its door rolled up exposing marijuana being cultivated. This greenhouse had marijuana plants that are planted in black in color plastic pots filled with dirt. The greenhouse to the east had marijuana being cultivated inside. Based on the photos we took, all of the marijuana plants were small/immature in size. In both greenhouses the marijuana plants were evenly spaced and planted in multiple rows. From my training and experience, I know these two greenhouses could contain dozens if not hundreds of small/immature marijuana plants.

**Photograph taken 7/25/2022**          **West Greenhouse**



**Photograph taken 7/25/2022**          **East Greenhouse**



Based on my training and experience and what I observed, I believe this subject property is growing marijuana far beyond any personal use amount. I further believe the marijuana being grown on this subject property is for sales and profit.

On 8/8/2022, I utilized imagery from both Google Earth, ParcelQuest and Lt. Persing's GPS mark to determine identifying information in regards to the above property.

Parcel Quest is an online service that maintains property records and other data that is pertinent to properties. Parcel Quest updates their resources daily to monthly with county records. Parcel Quest updates Siskiyou County parcel data daily and parcel map updates monthly. Parcel Quest utilizes aerial imagery and incorporates property boundary lines on the imagery.

I have utilized Parcel Quest on dozens of occasions and have found the information to be accurate. I know that the aerial imagery used by Parcel Quest is provided by "Google". Other law enforcement officers and I have used Parcel Quest in support of affidavits. Parcel Quest showed Siskiyou parcel **APN 104-320-100-000** was owned by **THAO TIM** who has a mailing address of **2559 ALTOS AVENUE SACRAMENTO CA 95815**. The transfer recording date of the property on Parcel Quest was 5/31/2019.

I am aware that Prop 64 was successfully passed in 2016 making recreational marijuana use and cultivation legal under certain circumstances. However according to Prop 64, it is still a

misdemeanor to cultivate more than 6 plants per parcel for recreational use and all marijuana cultivation in the state of California must continue to abide by the local City or County Ordinances. Clearly there are more than six marijuana plants being cultivated at the location.

I am aware that the Siskiyou County Ordinance section **15-18 and 15-19** went into effect on July 7, 2016.  Your affiant is also aware that violation of any provision within Ordinance **15-19** is a misdemeanor as stated in Siskiyou County Ordinance section 1-2.01.
The outdoor cultivation of marijuana is a violation of Siskiyou County Code (SCC) 10-14.030 (d).
The cultivation of marijuana may only occur within a residential accessory which meets the definition (as listed in the SCC) of "indoor" (Violation of SCC 10-14.030 (e)).
The cultivation of more than 12 marijuana plants on a parcel is in violation of SCC 10-14.030 (g).

Many records are now being kept on computer related materials such as those described on Exhibit "A".  I seek permission to remove all computer related items as described above for examination at the North State Major Investigation Team Office or other facility, because the contents of these items or containers are not readily apparent by visual inspection. The items may require the use of a projector or other equipment to see if it contains material described above. In the event that one or more of the items described above are located, it would take hours or even days to go through on the premises. This would lead to undue interference with the place to be searched and would represent an undue interference with my other assigned duties.

I also know from training and experience that persons who use controlled substances will often call their suppliers prior to purchasing the controlled substances. Those persons will often then meet their suppliers or go directly to the supplier's residence. I know from training and experience that persons involved in the sales of controlled substances frequently utilize telephones, cellular telephones, telephone answering machines, and pagers to conduct their business.  I seek permission to remove all cellular telephones for later examination, because the contents of these items or containers are not readily apparent by visual inspection. The items may require the use other equipment to see if it contains phone numbers, text messages, photographs and personal data. In the event that one or more of the items described above are located, it could take hours to go through on the premises. This would lead to undue interference with the place to be searched and would represent an undue interference with my other assigned duties.

I therefore request that the officers executing the search warrant be allowed to answer the telephone, return messages left on pagers and answering machines, and to answer the door of the residence without revealing their true identity in an attempt to identify those persons who arrive to purchase controlled substances.

I know that most people receive mail and keep important documents and personal letters. They also incur bills and keep items of personal property tending to identify the persons having control of the property and areas to be searched which include, receipts, address books, photographs, loan

documents, passbooks, checkbooks, lease agreements, deeds, addressed envelopes, diaries, and keys.

I believe those items will be found at **APN 104-320-100-000** and will tend to reveal the identity of the person(s) in control of the residence and properties.

I know from training and experience that persons, who sell controlled substances, including Marijuana, must purchase or manufacture the controlled substance illegally and that they will frequently keep address books, canceled checks, IOUs and documents that tend to identify the source from which the controlled substance was purchased and/or manufactured. I believe that those items may be found at **APN 104-320-100-000**. I also know from training and experience that persons involved in the sales of controlled substances almost always have drugs on hand for sale to their customers. If they do run out, they quickly get more in order to maintain the confidence of their customers and to satisfy their demands.

I also know from training and experience that persons who use controlled substances will often commit thefts to support their addiction. Those persons tend to sell or trade stolen property for controlled substances, and those who sell controlled substances tend to accept the property in lieu of currency. Those items of property frequently include items which have a high demand on the resale market and include, but are not limited to, bicycles, radios, cassette recorders, stereo equipment, televisions, and cable access devices. I know that such luxury items have individual serial numbers which are increasingly being reported to law enforcement by their rightful owners to assist in the recovery of such property. I believe that stolen property may be found at the premises and request permission to check the serial numbers of all property located at the location to be searched, which can be compared to those contained in the computerized property index to determine if they have been reported as being stolen.

I also know from training and experience that persons involved in the sales of controlled substances often keep firearms on hand to prevent the drugs from being stolen by others and/or seized by law enforcement.

I also know that persons involved in the sales of controlled substances frequently maintain radio frequency scanners in an attempt to monitor the activities of law enforcement.

I know from my training and experience that persons involved in the sales of controlled substances often are in possession of large amount of U.S. Currency which they have obtained from the sales of the controlled substance. I know this currency is subject to asset forfeiture proceedings.

EXHIBIT 2

Search Warrant No. 2022- 204

# SUPERIOR COURT OF CALIFORNIA
## County of SISKIYOU



## Search Warrant

**The People of the State of California**

**To Any Peace Officer in Siskiyou County**

<u>Sgt. Sam Kubowitz of the North State Major Investigation Team (NSMIT)</u>, swears under oath that the facts expressed by him in this Search Warrant, and in the attached and incorporated statement of probable cause, are true and that based thereon he/she has probable ~~cause to believe and does believe that the property and/or person described below~~ is lawfully seizable pursuant to Penal Code Section 1524, as indicated below, and is now located at the locations set forth below. Wherefore, affiant requests that this Search Warrant be issued.

Executed at Yreka, California

_____, Date **8/10/2022** at **1142** A.M./ P.M.
(Signature of Affiant)

**NIGHT SEARCH REQUESTED: YES [ ]   NO [X] - Justification on page(s)**
**HOBBS Sealing Requested:        YES [ ]   NO [X] - Justification on page(s)**

[ ]   it was stolen or embezzled;
[ ]   it was used as the means of committing a felony;
[X]  it is possessed by a person with the intent to use it as a means of committing a public offense, or is possessed by another
      to whom he or she may have delivered it for the purpose of concealing it or preventing its discovery;
[ ]   it tends to show that a felony has been committed, or that a particular person has committed a felony;
[ ]   it tends to show that sexual exploitation of a child, in violation of **Penal Code** §311.3, or depiction of sexual conduct of a
      person under the age of 18 years, in violation of **Penal Code** §311.11, has occurred or is occurring;
[ ]         there is a warrant for the person's arrest;

**YOU ARE THEREFORE COMMANDED TO SEARCH:**
        See attachment "A".
**FOR THE FOLLOWING PROPERTY:**
        See attachment "B".
**AND TO SEIZE IT IF FOUND** and bring it forthwith before me, or this court, at the courthouse of this court. This Search Warrant and incorporated Affidavit was sworn to as true and subscribed before me. Wherefore, I find probable cause for the issuance of this Search Warrant and do issue it.

_____, Date **8-10-22** at **11:41** A.M./P.M.
(Signature of Magistrate)

*Karen L. Dixon*
(Printed Name of Magistrate)

Be advised that pursuant to California Penal Code sections 1539 and 1540, you may file a written motion in the court of the above-mentioned judge who issued the warrant, seeking return of the property seized pursuant to this warrant.

For further information concerning this search warrant, contact the officer whose name appears on the warrant, Sgt. Sam Kubowitz at (530) 841-2900.

ATTACHMENT "A"

**YOU ARE THEREFORE COMMANDED TO SEARCH:**

**[X] Locations:**

**Parcel # (APN):** ████████0-000
**Parcel Status:** ACTIVE
**Owner Name:** XIONG TENG
**Mailing Address:** ████████████████ BROOKLYN PARK MN 55443

<u>Aerial Photo 7/25/2022</u>



The subject property is located in Siskiyou County. To reach the subject property from the intersection of Ager Beswick Rd and Desavado Rd., you travel ████████████████████ miles. Turn ████████████ for approximately ████████. ████████████ for approximately ████████ There is no driveway for this subject property and it will be on the east side of ████████ The approximate GPS Coordinate of ████████████ 27.375 will outdoor grow.

I am requesting to search all buildings, residences, garages, trailers/RV, sheds, outbuilding including tents, self-constructed structures, basements, attics, storage spaces, appurtenant

buildings, the surrounding grounds, and any containers locked or unlocked thereon which could contain any of the items sought.

The subject property is a 2.5 acre parcel in Siskiyou County. The subject property has an outdoor marijuana grow you can see from our aerial photos.

**[X]   Person:**

Any person found on the property at the time of search warrant service.

**[X]   Vehicles:**

Any vehicle found on the property at the time of search warrant service.

## ATTACHMENT "B"

**[X]   For the following Property:**

**MARIJUANA, CANNABIS, AND/OR CONCENTRATED CANNABIS**, in all forms: including but not limited to marijuana steams, leaves, stalks, seeds, and cola. Scissors, scales, measuring and weighing devices frequently used to prepare marijuana for commercial distribution; garbage bags, zip-lock bags, paper bags, glass containers, and similar containers commonly used to package and store marijuana.

**CULTIVATION AIDS AND EQUIPMENT:** including but not limited to artificial lighting equipment such as fluorescent lamps, metal halide lamps, high pressure sodium lamps, ballasts, reflective light hoods, and electric motors and track systems; fans; carbon dioxide generators; reflective materials; PH testers and balancers; ionizers; electric timers; rodent traps; plastic and wire mesh; plastic and ceramic pots; growing medium and potting soil; fertilizers; irrigation equipment, including PCV pipe and hose, drip lines, emitters, hand watering wands, and water holding tanks; diesel and/or gas generators; and any other object maintained, intended, or designed for to assist or aid in the cultivation of marijuana.

**CONTAINERS** in which any of the items sought could be found: including but not limited to safes, vehicles, outbuildings, sheds, attics, crawl spaces, and garbage or trash containers.

**INDICIA:** including but not limited to items related to the sales and/or trafficking of controlled substances such as ledgers; controlled substance customer lists; supplier lists; correspondence; notations; logs; receipts; journals; books; papers noting the price, quantity, or quality of controlled substances; papers noting the person(s) or the location(s) where controlled substances were obtained, transferred, sold, or distributed; papers indicating amounts due or amounts owed from transactions of controlled substances; any other form of "pay and owe" records; money sheets reflecting or accounting for monies and/or controlled substances received, dispersed, or exchanged; and to include monies obtained from sales or transactions of controlled

substances. Also, items showing evidence of dominion, control, or ownership of locations, vehicles, storage areas, safes, lock boxes, or containers to be searched: including but not limited to keys; photographs; current and cancelled mail and mail envelopes; other items of correspondence such as utility bills and telephone bills; rental agreements; grant deeds; legal documents; escrow documents; airline tickets and other tickets of identification for other forms of public transportation; personalized luggage or luggage tags; forms of official identification and exemplars of original handwriting including drivers licenses, social security cards, passports, resident alien cards, food stamps and food stamp identification cards, signature cards, usage cards and applications, insurance documentation, Medi-cal cards or stickers, medical records bills, prescriptions and prescription bottles; articles of personal clothing of suspect(s) or co-conspirator(s); articles of personal property such as telephone books, address books, notebooks, and papers; other items reflecting the names, addresses, or telephone numbers of associates possibly involved in controlled substance organizations, which tend to establish the existence of a conspiracy to import, transport, distribute, or sell controlled substances.

**FIREARMS:** including but not limited to weapons commonly used by individuals to facilitate trafficking of controlled substances, to protect caches of controlled substances, or to be offensively used against police officers serving a warrant; such as assault rifles, hunting rifles, shotguns, handguns, ammunition, and illegal or combat style knives.

**FINANCIAL DOCUMENTATION:** to include any and all financial records to assist in facilitating an investigation of the laundering of illicitly obtained monies or other forms of assets acquired through the sales, trafficking, or distribution of controlled substances, and the subsequent evasion of governmental taxes: including but not limited to federal and state tax returns; employment papers; banking records - including pass books, account information, canceled checks, deposit records, income and expenditure records, property acquisition records, money market and/or similar account records, and records of stocks and/or bonds exchanged; credit card records; records reflecting the rental of safe deposit boxes; safe deposit box keys; records reflecting the purchase, sale, lease, or rental of vehicles, aircraft, or other vessels; and any other negotiable instruments.

**COMPUTERS AND ASSOCIATED SOFTWARE AND ACCESSORIES;** written documentation, whether typed or handwritten, including, but not limited to, computer manuals and instructions for the use of any computers and their accessories as well as documentation containing passwords.

All electronic data processing and storage devices, computers and computer systems, such as central processing units, internal and peripheral storage devices such as fixed disks, internal and external hard drives, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, dongles, encryption keys, personal data assistants (PDA's) or other memory storage devices; and any/all peripheral input/output devices such as keyboards, printers, video display monitors, optical readers and related communication devices such as modems, associated telephone sets, speed dialers, and/or other controlling devices, plotters, software to run programs, connecting cables and plugs, peripherals such as joysticks, mouse's, or other input devices,

scanners, writing pads, manuals, connecting switches, telephones and telephone cables, and interface devices; system documentation, operating logs and documentation, software and instructional manuals. Computing or data processing software, stored on any type of medium such as: hard disks, floppy disks, CD-R's, CD-RW's, DVD's, cassette tapes, or other permanent or transient storage medium.

Any records, whether stored on paper, on magnetic media such as tape, cassette, disk, diskette or on memory storage devices such as optical disks, programmable instruments such as telephones, "electronic calendar\address books" calculators, or any other storage media, together with indicia of use, ownership, possession, or control of such records.

Any written or computer communication in printed or stored medium such as E-Mail and Chat Logs whether in active files, deleted files or unallocated space on the hard drive, floppy drive or any data storage media.

~~Search of all of the above items is for files, data, images, software, operating systems, deleted files,~~ altered files, system configurations, drive and disk configurations, date and time, and unallocated and slack space, for evidence of cultivation and possession for sales of marijuana.

With respect to computer systems and any items listed above found during the execution with this Search Warrant, the searching Peace Officers are authorized to seize and book said computer systems and any items listed above and transfer them to a Law Enforcement Agency location prior to commencing the search of the items. Furthermore, said search may continue beyond the ten-day period beginning upon issuance of this Search Warrant, to the extent necessary to complete the search on the computer systems and any items listed above.

**TELEPHONES/CELLULAR PHONES:** Police officers are directed to answer, record, monitor, note, and converse with callers who appear to be calling in regards to controlled substance trafficking or money laundering on any telephone or cellular phone within the location(s), vehicle(s), and/or person(s) to be searched without revealing the officers' identity.

Officers may seize and book cellular phones deemed relevant to the investigation to be examined at a later date with a separate search warrant. Officers are allowed to transfer them to a Law Enforcement Agency location prior to commencing the search of the items.

**WIRING:** to include all items used in the illegal diverting of power, including the components of the power meter used to read the power usage of the location(s) to be searched; and shall be allowed to seize the entire commercial (PG&E or other commercial electrical provider) power box and electrical bypass at the power meter.

**UNITED STATES CURRENCY:** All U.S. Currency that is seized and that might be subject to forfeiture under 11470 Et. Seq., and 11488 (b) of the California Health and Safety Code, be deposited into the asset forfeiture account, established by the Siskiyou County Sheriff's Office

pending the outcome of forfeiture proceedings against said property, I request that such monies or property seized under the order of this search warrant, pursuant to Penal Code Section 1536, and which are determined to be proceeds of drug sales, or determined to have been intended to be used to facilitate such drugs sales, be seized under the authority of Section 11470 and 11488 of the California Health and Safety Code, and therefore be released from evidence in the custody and control of the appropriate law enforcement agency pending adjudication of forfeiture proceedings. I further request that any seized monies and monetary instruments be placed into an interest bearing trust account of such appropriate law enforcement agency pending the adjudication of the forfeiture proceedings.

**OFFICERS SHALL BE ALLOWED TO EXAMINE** radios, cassette recorders, stereo equipment, televisions, cable access devices, and similar items for their serial numbers.

**OFFICERS SHALL BE ALLOWED TO BRING OTHER AGENCIES ONTO THE PROPERTY** to be searched, who have expertise in the area of building codes, unsafe wiring, fire hazards, and environmental health, I request that the court authorize the use of Federal Agency personnel to accompany the Peace Officers executing this Search Warrant for the purpose of assisting in the service and execution of this Search Warrant as provided for under California Penal Code Section 1530 and 1538. The Federal Agency personnel can also assist in the computer examinations of the seized items.

SPECIAL REQUEST(S): Allied agency assistance: I request that representatives from the **State Water Resources Control Board**, and/or the California Regional Water Quality Control Board, North Coast Region (collectively Water Boards) be allowed to inspect the location to be searched pursuant to Water Code sections 1051 and 13267 to determine if there are violations of the California Water Code, the Porter Cologne Water Quality Control Act (Cal. Wat. Code, § 13000 et seq.) and the Federal Clean Water Act (33 U.S.C. § 1251 et seq.). Such violations may include, but are not necessarily limited to: conditions of and/or threatened conditions of pollution or nuisance resulting from discharges of waste (as defined in Water Code § 13050, subdivision (d)) to waters of the State and of the United States in violation of the Porter-Cologne Water Quality Control Act (Wat. Code § 13000 et seq.) and the Federal Water Pollution Control Act (33 U.S.C. § 1251 et seq.); and the diversion, use, and/or storage of water in violation of Water Code §§ 1052, subdivision (a), and 5101. Sources of Water Code § 13050, subdivision (d), waste are likely to include chemicals and/or hazardous wastes from garbage, pesticides, fertilizers, leachate, leaking fuel tanks or other storage containers, construction debris, and earthen materials from timberland conversion, stream dredging, in-stream dams, grading, road construction, and soil disturbance associated with marijuana cultivation.

I request that the scope of the Water Boards' inspection including entering upon and conducting a visual inspection of the entire Property and conducting and documenting such inspection by taking such samples and reviewing such writings and records that are kept and maintained on the Property as is necessary to determine compliance. The inspection may include: 1) entering the Property, observing the physical conditions of the Property, and any equipment located thereon and any operations, processes or other activities being conducted thereon, including, but not

limited to, water diversions, graded areas, cultivated areas, road crossings, disposal and/or ponds, surface drainages, watercourses, material stockpiles, storage, and buildings located on the Property; 2) taking photographs and video of the physical conditions of the Property and any equipment located thereon and any operations, processes or other activities being conducted thereon; 3) questioning of or conferring with persons present on the property privately to obtain information bearing on whether violations of the laws and regulations occurred; 4) the measurement of the pumping rate, if extant; the measurement of each reservoir's area, dam height, and diversion facilities, if extant; 5) collecting and analyzing samples of water, raw, graded, processed or stored materials, chemical, fuel, waste, and/or other stored or contained materials; 6) testing for water pollutants, including but not limited to sediment, fertilizers and pesticides, from any source whether mechanical, process, or natural; 7) inspection and duplicating any writings and records of spills or emergencies, business plans, contingency plans, or any other information authorized under California Water Code section 13267, subdivision (c).

"Staff from the **California Department of Food and Agriculture (CDFA)**, be allowed to inspect the location to be searched to determine if there are violations of the California Business and Professions Code and/or the California Code of Regulations related to state cannabis cultivation licenses. Such violations may include but are not necessarily limited to operating and recordkeeping requirements and engaging in commercial cannabis cultivation without a license. (Bus. & Prof. Code § 26000-26231.2.)"

I request that the court authorize the use of Federal Agency personnel to accompany the Peace Officers executing this Search Warrant for the purpose of assisting in the service and execution of this Search Warrant as provided for under California Penal Code Section 1530 and 1538. The Federal Agency personnel can also assist in the computer examinations of the seized items.

I further request the court to authorize the use of person(s) who are Not Peace Officers to accompany the Peace Officers during the execution of this Search Warrant for the purpose of assisting them in the service of this Search Warrant as provided for under California Penal Code Section 1530.

I request that upon adjudication of the case(s) against all defendant(s) in any criminal action associated with this search warrant, including the resolution of any and all appeals, and the written concurrence of the Siskiyou County Office of District Attorney, the property be disposed of in accordance with the procedures set forth in California Penal Code, sections 1407 to 1422, without the necessity of a further court order pursuant to California Penal Code, section 1536.

## STATEMENT OF QUALIFICATIONS

Your affiant, Sam Kubowitz had been employed as a Deputy Sheriff with the County of Siskiyou since 2007 and I am currently assigned to the departments Marijuana Eradication Team.  Prior to this, I was employed as a Police Officer for the City of Mt. Shasta from 2004 to 2007.

Your affiant attended the College of the Redwoods Basic Police Academy located in Eureka, Ca. Your affiant completed this training in June of 2004.  As part of this training I completed 950 hours of training.  Your affiant currently holds a Basic certificated issued to him by the Commission of Peace Officer Standards and Training (POST).

On April 3rd-7th 2006, your affiant completed a 40 hours course in Yreka, Ca, hosted by Cavenaugh & Associated.  This training was in regards to all aspects of Driving Under the Influence enforcement.

On July 24th- 26th 2008, your affiant completed a 24 hours course to become a Drug and Alcohol Recognition expert.

On January 12th- 14th 2012, your affiant completed a 24 hours training course hosted by the California Narcotics Canine Association.

On November 26th- 28th 2012, your affiant completed a 24 hours training course hosted by the California Narcotics Officer Association.

On January 28th – February 1st 2019, your affiant completed a 40 hours course to become a Field Training Officer.  On July 8th 2019, your affiant completed an 8-hour course in Crisis Intervention.

In October of 2021, I was promoted to the rank of Detective Sergeant and assigned to the Marijuana Eradication Team.

At this point in his career, your Affiant has assisted in no less than 100 marijuana related search warrants.  In addition, your Affiant has worked several interdiction details on local highways in search of subjects who were using vehicles to traffic controlled substances to include marijuana within Siskiyou County.   Your Affiant has been involved in many marijuana related investigations, both indoor and outdoor in many north state counties.

## STATEMENT OF PROBABLE CAUSE

On 7/25/2022, Lt. Persing and I conducted and aerial surveillance in the area of KRCE (Klamath River Country Estates). This subject property caught my attention by having an outdoor marijuana grow on it. As we were flying around the subject property, Lt. Persing and I took several photos of the outdoor marijuana grow. Lt. Persing also took a GPS location of this subject property for later reference.

On 8/9/2022, I reviewed the photos from Lt. Persing and myself. The outdoor marijuana grow has marijuana plants that are planted in black in color plastic pots filled with dirt. A couple of marijuana plants are planted in tan in color plastic bags filled with dirt. The marijuana plants were evenly spaced and planted in multiple rows. Based on the photos we took, all of the marijuana plants appear to be immature in their growth cycle. From the photo, I counted approximately 98 marijuana plants.

Photograph taken 7/25/2022



Based on my training and experience and what I observed, I believe this subject property is growing marijuana far beyond any personal use amount. I further believe the marijuana being grown on this subject property is for sales and profit.

On 8/9/2022, I utilized imagery from both Google Earth, ParcelQuest and Lt. Persing's GPS mark to determine identifying information in regards to the above property.

Page #:    9



Parcel Quest is an online service that maintains property records and other data that is pertinent to properties. Parcel Quest updates their resources daily to monthly with county records. Parcel Quest updates Siskiyou County parcel data daily and parcel map updates monthly. Parcel Quest utilizes aerial imagery and incorporates property boundary lines on the imagery.

I have utilized Parcel Quest on dozens of occasions and have found the information to be accurate. I know that the aerial imagery used by Parcel Quest is provided by "Google". Other law enforcement officers and I have used Parcel Quest in support of affidavits. Parcel Quest showed Siskiyou parcel ███████████ 90-000 was owned by **XIONG TENG** who has a mailing address of ███████████████████████████ The transfer recording date of the property on Parcel Quest was 12/1/2020.

I am aware that Prop 64 was successfully passed in 2016 making recreational marijuana use and cultivation legal under certain circumstances. However according to Prop 64, it is still a misdemeanor to cultivate more than 6 plants per parcel for recreational use and all marijuana cultivation in the state of California must continue to abide by the local City or County Ordinances. Clearly there are more than six marijuana plants being cultivated at the location.

I am aware that the Siskiyou County Ordinance section **15-18 and 15-19** went into effect on July 7, 2016. Your affiant is also aware that violation of any provision within Ordinance **15-19** is a misdemeanor as stated in Siskiyou County Ordinance section 1-2.01.
The outdoor cultivation of marijuana is a violation of Siskiyou County Code (SCC) 10-14.030 (d).
The cultivation of marijuana may only occur within a residential accessory which meets the definition (as listed in the SCC) of "indoor" (Violation of SCC 10-14.030 (e)).
The cultivation of more than 12 marijuana plants on a parcel is in violation of SCC 10-14.030 (g).

Many records are now being kept on computer related materials such as those described on Exhibit "A". I seek permission to remove all computer related items as described above for examination at the North State Major Investigation Team Office or other facility, because the contents of these items or containers are not readily apparent by visual inspection. The items may require the use of a projector or other equipment to see if it contains material described above. In the event that one or more of the items described above are located, it would take hours or even days to go through on the premises. This would lead to undue interference with the place to be searched and would represent an undue interference with my other assigned duties.

I also know from training and experience that persons who use controlled substances will often call their suppliers prior to purchasing the controlled substances. Those persons will often then meet their suppliers or go directly to the supplier's residence. I know from training and experience that persons involved in the sales of controlled substances frequently utilize telephones, cellular telephones, telephone answering machines, and pagers to conduct their business. I seek permission to remove all cellular telephones for later examination, because the contents of these

items or containers are not readily apparent by visual inspection. The items require the use of other equipment to see if it contains phone numbers, text messages, photographs and personal data. In the event that one or more of the items described above are located, it could take hours to go through on the premises. This would lead to undue interference with the place to be searched and would represent an undue interference with my other assigned duties.

I therefore request that the officers executing the search warrant be allowed to answer the telephone, return messages left on pagers and answering machines, and to answer the door of the residence without revealing their true identity in an attempt to identify those persons who arrive to purchase controlled substances.

I know that most people receive mail and keep important documents and personal letters. They also incur bills and keep items of personal property tending to identify the persons having control of the property and areas to be searched which include, receipts, address books, photographs, loan documents, passbooks, checkbooks, lease agreements, deeds, addressed envelopes, diaries, and keys.

I believe those items will be found at _____ 0-000 and will tend to reveal the identity of the person(s) in control of the residence and properties.

I know from training and experience that persons, who sell controlled substances, including Marijuana, must purchase or manufacture the controlled substance illegally and that they will frequently keep address books, canceled checks, IOUs and documents that tend to identify the source from which the controlled substance was purchased and/or manufactured. I believe that those items may be found at _____ I also know from training and experience that persons involved in the sales of controlled substances almost always have drugs on hand for sale to their customers. If they do run out, they quickly get more in order to maintain the confidence of their customers and to satisfy their demands.

I also know from training and experience that persons who use controlled substances will often commit thefts to support their addiction. Those persons tend to sell or trade stolen property for controlled substances, and those who sell controlled substances tend to accept the property in lieu of currency. Those items of property frequently include items which have a high demand on the resale market and include, but are not limited to, bicycles, radios, cassette recorders, stereo equipment, televisions, and cable access devices. I know that such luxury items have individual serial numbers which are increasingly being reported to law enforcement by their rightful owners to assist in the recovery of such property. I believe that stolen property may be found at the premises and request permission to check the serial numbers of all property located at the location to be searched, which can be compared to those contained in the computerized property index to determine if they have been reported as being stolen.

I also know from training and experience that persons involved in the sales of controlled substances often keep firearms on hand to prevent the drugs from being stolen by others and/or seized by law enforcement.

I also know that persons involved in the sales of controlled substances frequently maintain radio frequency scanners in an attempt to monitor the activities of law enforcement.

I know from my training and experience that persons involved in the sales of controlled substances often are in possession of large amount of U.S. Currency which they have obtained from the sales of the controlled substance. I know this currency is subject to asset forfeiture proceedings.

EXHIBIT 3

Case 3:24-cv-02563-DJC-CSB   Document 11-5   Filed 07/25/25

# Use of Force

## 300.1   PURPOSE AND SCOPE

This policy provides guidelines on the reasonable use of force. While there is no way to specify the exact amount or type of reasonable force to be applied in any situation, every member of this agency is expected to use these guidelines to make such decisions in a professional, impartial, and reasonable manner (Government Code § 7286).

In addition to those methods, techniques, and tools set forth below, the guidelines for the reasonable application of force contained in this policy shall apply to all policies addressing the potential use of force, including but not limited to the Control Devices and Techniques and Conducted Energy Device policies.

Retaliation prohibitions for reporting suspected violations are addressed in the Anti-Retaliation Policy.

### 300.1.1   DEFINITIONS

Definitions related to this policy include:

**Deadly force** - Any use of force that creates a substantial risk of causing death or serious bodily injury, including but not limited to the discharge of a firearm (Penal Code § 835a).

**Feasible** - Reasonably capable of being done or carried out under the circumstances to successfully achieve the arrest or lawful objective without increasing risk to the deputy or another person (Government Code § 7286(a)).

**Force** - The application of physical techniques or tactics, chemical agents, or weapons to another person. It is not a use of force when a person allows him/herself to be searched, escorted, handcuffed, or restrained.

**Serious bodily injury** - A serious impairment of physical condition, including but not limited to the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement (Penal Code § 243(f)(4)).

**Totality of the circumstances** - All facts known to the deputy at the time, including the conduct of the officer and the subject leading up to the use of force (Penal Code § 835a).

## 300.2   POLICY

The use of force by law enforcement personnel is a matter of critical concern, both to the public and to the law enforcement community. Deputies are involved on a daily basis in numerous and varied interactions and, when warranted, may use reasonable force in carrying out their duties.

Deputies must have an understanding of, and true appreciation for, their authority and limitations. This is especially true with respect to overcoming resistance while engaged in the performance of law enforcement duties.

Copyright Lexipol, LLC 2023/04/10, All Rights Reserved.
Published with permission by Siskiyou County Sheriff's Office

Case 2:23-cv-02563-DJC-CKD   Document 11-5   Filed 07/25/25   Page 31 of 46

*Use of Force*

The Agency recognizes and respects the value of all human life and dignity without prejudice to anyone. Vesting deputies with the authority to use reasonable force and to protect the public welfare requires monitoring, evaluation and a careful balancing of all interests.

### 300.2.1   DUTY TO INTERCEDE

Any deputy present and observing another law enforcement officer or an employee using force that is clearly beyond that which is necessary, as determined by an objectively reasonable deputy under the circumstances, shall, when in a position to do so, intercede (as defined by Government Code § 7286) to prevent the use of unreasonable force.

When observing force used by a law enforcement officer, each deputy should take into account the totality of the circumstances and the possibility that other law enforcement officers may have additional information regarding the threat posed by the subject (Government Code § 7286(b)).

### 300.2.2   FAIR AND UNBIASED USE OF FORCE

Deputies are expected to carry out their duties, including the use of force, in a manner that is fair and unbiased (Government Code § 7286(b)). See the Bias-Based Policing Policy for additional guidance.

### 300.2.3   DUTY TO REPORT EXCESSIVE FORCE

Any deputy who observes a law enforcement officer or an employee use force that potentially exceeds what the deputy reasonably believes to be necessary shall immediately report these observations to a supervisor (Government Code § 7286(b)).

As used in this subsection, "immediately" means as soon as it is safe and feasible to do so.

### 300.2.4   FAILURE TO INTERCEDE

A deputy who has received the required training on the duty to intercede and then fails to act to intercede when required by law, may be disciplined in the same manner as the deputy who used force beyond that which is necessary (Government Code § 7286(b)).

### 300.3   USE OF FORCE

Deputies shall use only that amount of force that reasonably appears necessary given the facts and totality of the circumstances known to or perceived by the deputy at the time of the event to accomplish a legitimate law enforcement purpose (Penal Code § 835a).

The reasonableness of force will be judged from the perspective of a reasonable deputy on the scene at the time of the incident. Any evaluation of reasonableness must allow for the fact that deputies are often forced to make split-second decisions about the amount of force that reasonably appears necessary in a particular situation, with limited information and in circumstances that are tense, uncertain, and rapidly evolving.

Given that no policy can realistically predict every possible situation a deputy might encounter, deputies are entrusted to use well-reasoned discretion in determining the appropriate use of force in each incident. Deputies may only use a level of force that they reasonably believe is

Copyright Lexipol, LLC 2023/04/10, All Rights Reserved.
Published with permission by Siskiyou County Sheriff's Office

Case 2:23-cv-02563-DJC-CKD   Document 11-5   Filed 07/25/25   Page 32 of 46

*Use of Force*

proportional to the seriousness of the suspected offense or the reasonably perceived level of actual or threatened resistance (Government Code § 7286(b)).

It is also recognized that circumstances may arise in which deputies reasonably believe that it would be impractical or ineffective to use any of the approved or authorized tools, weapons, or methods provided by the Agency. Deputies may find it more effective or reasonable to improvise their response to rapidly unfolding conditions that they are confronting. In such circumstances, the use of any improvised device or method must nonetheless be objectively reasonable and utilized only to the degree that reasonably appears necessary to accomplish a legitimate law enforcement purpose.

While the ultimate objective of every law enforcement encounter is to avoid or minimize injury, nothing in this policy requires a deputy to retreat or be exposed to possible physical injury before applying reasonable force.

### 300.3.1   USE OF FORCE TO EFFECT AN ARREST
Any peace officer may use objectively reasonable force to effect an arrest, to prevent escape, or to overcome resistance. A peace officer who makes or attempts to make an arrest need not retreat or desist from his/her efforts by reason of resistance or threatened resistance on the part of the person being arrested; nor shall a deputy be deemed the aggressor or lose his/her right to self-defense by the use of reasonable force to effect the arrest, prevent escape, or to overcome resistance. Retreat does not mean tactical repositioning or other de-escalation techniques (Penal Code § 835a).

### 300.3.2   FACTORS USED TO DETERMINE THE REASONABLENESS OF FORCE
When determining whether to apply force and evaluating whether a deputy has used reasonable force, a number of factors should be taken into consideration, as time and circumstances permit (Government Code § 7286(b)). These factors include but are not limited to:

(a)   The apparent immediacy and severity of the threat to deputies or others (Penal Code § 835a).

(b)   The conduct of the individual being confronted, as reasonably perceived by the deputy at the time (Penal Code § 835a).

(c)   Deputy/subject factors (age, size, relative strength, skill level, injuries sustained, level of exhaustion or fatigue, the number of deputies available vs. subjects).

(d)   The conduct of the involved deputy leading up to the use of force (Penal Code § 835a).

(e)   The effects of suspected drugs or alcohol.

(f)   The individual's apparent mental state or capacity (Penal Code § 835a).

(g)   The individual's apparent ability to understand and comply with deputy commands (Penal Code § 835a).

(h)   Proximity of weapons or dangerous improvised devices.

Copyright Lexipol, LLC 2023/04/10, All Rights Reserved.
Published with permission by Siskiyou County Sheriff's Office

*Use of Force*

(i)    The degree to which the subject has been effectively restrained and his/her ability to resist despite being restrained.

(j)    The availability of other reasonable and feasible options and their possible effectiveness (Penal Code § 835a).

(k)    Seriousness of the suspected offense or reason for contact with the individual prior to and at the time force is used.

(l)    Training and experience of the deputy.

(m)    Potential for injury to deputies, suspects, bystanders, and others.

(n)    Whether the person appears to be resisting, attempting to evade arrest by flight, or is attacking the deputy.

(o)    The risk and reasonably foreseeable consequences of escape.

(p)    The apparent need for immediate control of the subject or a prompt resolution of the situation.

(q)    Whether the conduct of the individual being confronted no longer reasonably appears to pose an imminent threat to the deputy or others.

(r)    Prior contacts with the subject or awareness of any propensity for violence.

(s)    Any other exigent circumstances.

### 300.3.3  PAIN COMPLIANCE TECHNIQUES

Pain compliance techniques may be effective in controlling a physically or actively resisting individual. Deputies may only apply those pain compliance techniques for which they have successfully completed agency-approved training. Deputies utilizing any pain compliance technique should consider:

(a)    The degree to which the application of the technique may be controlled given the level of resistance.

(b)    Whether the person can comply with the direction or orders of the deputy.

(c)    Whether the person has been given sufficient opportunity to comply.

The application of any pain compliance technique shall be discontinued once the deputy determines that compliance has been achieved.

### 300.3.4  RESTRICTIONS ON THE USE OF CAROTID CONTROL HOLD

Deputies of this agency are not authorized to use a carotid restraint hold. A carotid restraint means a vascular neck restraint or any similar restraint, hold, or other defensive tactic in which pressure is applied to the sides of a person's neck that involves a substantial risk of restricting blood flow and may render the person unconscious in order to subdue or control the person (Government Code § 7286.5).

Copyright Lexipol, LLC 2023/04/10, All Rights Reserved.
Published with permission by Siskiyou County Sheriff's Office

*Use of Force*

### 300.3.5  USE OF FORCE TO SEIZE EVIDENCE

In general, deputies may use reasonable force to lawfully seize evidence and to prevent the destruction of evidence. However, deputies are discouraged from using force solely to prevent a person from swallowing evidence or contraband. In the instance when force is used, deputies should not intentionally use any technique that restricts blood flow to the head, restricts respiration or which creates a reasonable likelihood that blood flow to the head or respiration would be restricted. Deputies are encouraged to use techniques and methods taught by the Siskiyou County Sheriff's Office for this specific purpose.

### 300.3.6  ALTERNATIVE TACTICS - DE-ESCALATION

As time and circumstances reasonably permit, and when community and officer safety would not be compromised, deputies should consider actions that may increase deputy safety and may decrease the need for using force:

(a)   Summoning additional resources that are able to respond in a reasonably timely manner.

(b)   Formulating a plan with responding deputies before entering an unstable situation that does not reasonably appear to require immediate intervention.

(c)   Employing other tactics that do not unreasonably increase deputy jeopardy.

In addition, when reasonable, deputies should evaluate the totality of circumstances presented at the time in each situation and, when feasible, consider and utilize reasonably available alternative tactics and techniques that may persuade an individual to voluntarily comply or may mitigate the need to use a higher level of force to resolve the situation before applying force (Government Code § 7286(b)). Such alternatives may include but are not limited to:

(a)   Attempts to de-escalate a situation.

(b)   If reasonably available, the use of crisis intervention techniques by properly trained personnel.

### 300.3.7  RESTRICTIONS ON THE USE OF A CHOKE HOLD

Deputies of this agency are not authorized to use a choke hold. A choke hold means any defensive tactic or force option in which direct pressure is applied to a person's trachea or windpipe (Government Code § 7286.5).

### 300.3.8  ADDITIONAL RESTRICTIONS

Terms such as "positional asphyxia," "restraint asphyxia," and "excited delirium" continue to remain the subject of debate among experts and medical professionals, are not universally recognized medical conditions, and frequently involve other collateral or controlling factors such as narcotics or alcohol influence, or pre-existing medical conditions. While it is impractical to restrict a deputy's use of reasonable control methods when attempting to restrain a combative individual, deputies are not authorized to use any restraint or transportation method which might unreasonably impair an individual's breathing or respiratory capacity for a period beyond the point when the individual has been adequately and safely controlled. Once controlled, the individual should be placed into a

Copyright Lexipol, LLC 2023/04/10, All Rights Reserved.
Published with permission by Siskiyou County Sheriff's Office

Case 2:23-cv-02563-DJC-CKD   Document 11-5   Filed 07/25/25   Page 35 of 46

*Use of Force*

recovery position (e.g., supine or seated) and monitored for signs of medical distress (Government Code § 7286.5).

## 300.4   DEADLY FORCE APPLICATIONS

Where feasible, the deputy shall, prior to the use of deadly force, make reasonable efforts to identify him/herself as a peace officer and to warn that deadly force may be used, unless the deputy has objectively reasonable grounds to believe the person is aware of those facts (Penal Code 835a).

If an objectively reasonable deputy would consider it safe and feasible to do so under the totality of the circumstances, deputies shall evaluate and use other reasonably available resources and techniques when determining whether to use deadly force. To the extent that it is reasonably practical, deputies should consider their surroundings and any potential risks to bystanders prior to discharging a firearm (Government Code § 7286(b)).

The use of deadly force is only justified when the deputy reasonably believes it is necessary in the following circumstances (Penal Code § 835a):

    (a)    A deputy may use deadly force to protect him/herself or others from what he/she reasonably believes is an imminent threat of death or serious bodily injury to the deputy or another person.

    (b)    A deputy may use deadly force to apprehend a fleeing person for any felony that threatened or resulted in death or serious bodily injury, if the deputy reasonably believes that the person will cause death or serious bodily injury to another unless immediately apprehended.

Deputies shall not use deadly force against a person based on the danger that person poses to him/herself, if an objectively reasonable deputy would believe the person does not pose an imminent threat of death or serious bodily injury to the deputy or to another person (Penal Code § 835a).

An "imminent" threat of death or serious bodily injury exists when, based on the totality of the circumstances, a reasonable deputy in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the deputy or another person. A deputy's subjective fear of future harm alone is insufficient as an imminent threat. An imminent threat is one that from appearances is reasonably believed to require instant attention (Penal Code § 835a).

### 300.4.1   SHOOTING AT OR FROM MOVING VEHICLES

Shots fired at or from a moving vehicle are rarely effective and may involve additional considerations and risks. When feasible, deputies should take reasonable steps to move out of the path of an approaching vehicle instead of discharging their firearm at the vehicle or any of its occupants. A deputy should only discharge a firearm at a moving vehicle or its occupants when the deputy reasonably believes there are no other reasonable means available to avert the imminent threat of the vehicle, or if deadly force other than the vehicle is directed at the deputy or others (Government Code § 7286(b)).

Copyright Lexipol, LLC 2023/04/10, All Rights Reserved.
Published with permission by Siskiyou County Sheriff's Office

*Use of Force*

Deputies should not shoot at any part of a vehicle in an attempt to disable the vehicle.

### 300.4.2  DISPLAYING OF FIREARMS
Given that individuals might perceive the display of a firearm as a potential application of force, deputies should carefully evaluate each tactical situation and use sound discretion when drawing a firearm in public by considering the following guidelines (Government Code § 7286(b)):

(a)  If the deputy does not initially perceive a threat but reasonably believes that the potential for such threat exists, firearms should generally be kept in the low-ready or other position not directed toward an individual.

(b)  If the deputy reasonably believes that a threat exists based on the totality of circumstances presented at the time (e.g., high-risk stop, tactical entry, armed encounter), firearms may be directed toward such threat until the deputy no longer perceives such threat.

Once it is reasonably safe to do so, deputies should carefully secure all firearms.

### 300.5  REPORTING THE USE OF FORCE
Any use of force by a member of this agency shall be documented promptly, completely, and accurately in an appropriate report, depending on the nature of the incident. The deputy should articulate the factors perceived and why he/she believed the use of force was reasonable under the circumstances. To collect data for purposes of training, resource allocation, analysis, and related purposes, the Agency may require the completion of additional report forms, as specified in agency policy, procedure, or law. See the Report Preparation Policy for additional circumstances that may require documentation.

### 300.5.1  NOTIFICATION TO SUPERVISORS
Any use of force by a deputy shall be reported immediately to a supervisor, including but not limited to the following circumstances (Penal Code § 832.13):

(a)  The application caused a visible injury.

(b)  The application would lead a reasonable deputy to conclude that the individual may have experienced more than momentary discomfort.

(c)  The individual subjected to the force complained of injury or continuing pain.

(d)  The individual indicates intent to pursue litigation.

(e)  Any application of a conducted energy device or control device.

(f)  Any application of a restraint device other than handcuffs, shackles, or belly chains.

(g)  The individual subjected to the force was rendered unconscious.

(h)  An individual was struck or kicked.

(i)  An individual alleges unreasonable force was used or that any of the above has occurred.

As used in this subsection, "immediately" means as soon as it is safe and feasible to do so.

Copyright Lexipol, LLC 2023/04/10, All Rights Reserved.
Published with permission by Siskiyou County Sheriff's Office

*Use of Force*

300.5.2   REPORTING TO CALIFORNIA DEPARTMENT OF JUSTICE
Statistical data regarding all officer-involved shootings and incidents involving use of force resulting in serious bodily injury is to be reported to the California Department of Justice as required by Government Code § 12525.2. See the Records Bureau Policy.

## 300.6   MEDICAL CONSIDERATIONS
Once it is reasonably safe to do so, properly trained deputies should promptly provide or procure medical assistance for any person injured or claiming to have been injured in a use of force incident (Government Code § 7286(b)).

Prior to booking or release, medical assistance shall be obtained for any person who exhibits signs of physical distress, who has sustained visible injury, expresses a complaint of injury or continuing pain, or who was rendered unconscious. Any individual exhibiting signs of physical distress after an encounter should be continuously monitored until the individual can be medically assessed.

Based upon the deputy's initial assessment of the nature and extent of the subject's injuries, medical assistance may consist of examination by fire personnel, paramedics, hospital staff, or medical staff at the jail. If any such individual refuses medical attention, such a refusal shall be fully documented in related reports and, whenever practicable, should be witnessed by another deputy and/or medical personnel. If a recording is made of the contact or an interview with the individual, any refusal should be included in the recording, if possible.

The on-scene supervisor or, if the on-scene supervisor is not available, the primary handling deputy shall ensure that any person providing medical care or receiving custody of a person following any use of force is informed that the person was subjected to force. This notification shall include a description of the force used and any other circumstances the deputy reasonably believes would be potential safety or medical risks to the subject (e.g., prolonged struggle, extreme agitation, impaired respiration).

Persons who exhibit extreme agitation, violent irrational behavior accompanied by profuse sweating, extraordinary strength beyond their physical characteristics and imperviousness to pain, or who require a protracted physical encounter with multiple deputies to be brought under control, may be at an increased risk of sudden death. Calls involving these persons should be considered medical emergencies. Deputies who reasonably suspect a medical emergency should request medical assistance as soon as practicable and have medical personnel stage away if appropriate.

See the Medical Aid and Response Policy for additional guidelines.

## 300.7   SUPERVISOR RESPONSIBILITY
A supervisor should respond to any reported use of force, if reasonably available. The responding supervisor is expected to (Government Code § 7286(b)):

(a)   Obtain the basic facts from the involved deputies. Absent an allegation of misconduct or excessive force, this will be considered a routine contact in the normal course of duties.

(b)   Ensure that any injured parties are examined and treated.

Copyright Lexipol, LLC 2023/04/10, All Rights Reserved.
Published with permission by Siskiyou County Sheriff's Office

*Use of Force*

(c)   When possible, separately obtain a recorded interview with the subject upon whom force was applied. If this interview is conducted without the person having voluntarily waived his/her *Miranda* rights, the following shall apply:

1.   The content of the interview should not be summarized or included in any related criminal charges.

2.   The fact that a recorded interview was conducted should be documented in a property or other report.

3.   The recording of the interview should be distinctly marked for retention until all potential for civil litigation has expired.

(d)   Once any initial medical assessment has been completed or first aid has been rendered, ensure that photographs have been taken of any areas involving visible injury or complaint of pain, as well as overall photographs of uninjured areas. These photographs should be retained until all potential for civil litigation has expired.

(e)   Identify any witnesses not already included in related reports.

(f)   Review and approve all related reports.

(g)   Determine if there is any indication that the subject may pursue civil litigation.

1.   If there is an indication of potential civil litigation, the supervisor should complete and route a notification of a potential claim through the appropriate channels.

(h)   Evaluate the circumstances surrounding the incident and initiate an administrative investigation if there is a question of policy non-compliance or if for any reason further investigation may be appropriate.

In the event that a supervisor is unable to respond to the scene of an incident involving the reported application of force, the supervisor is still expected to complete as many of the above items as circumstances permit.

## 300.7.1   WATCH COMMANDER RESPONSIBILITY
The Watch Commander shall review each use of force by any personnel within his/her command to ensure compliance with this policy.

## 300.8   TRAINING
Deputies, investigators, and supervisors will receive periodic training on this policy and demonstrate their knowledge and understanding (Government Code § 7286(b)).

Subject to available resources, the Training Manager should ensure that deputies receive periodic training on de-escalation tactics, including alternatives to force.

Training should also include (Government Code § 7286(b)):

(a)   Guidelines regarding vulnerable populations, including but not limited to children, elderly persons, pregnant individuals, and individuals with physical, mental, and developmental disabilities.

(b)   Training courses required by and consistent with POST guidelines set forth in Penal Code § 13519.10.

Copyright Lexipol, LLC 2023/04/10, All Rights Reserved.
Published with permission by Siskiyou County Sheriff's Office

*Use of Force*

See the Training Policy for restrictions relating to deputies who are the subject of a sustained use of force complaint.

### 300.9   USE OF FORCE ANALYSIS

At least annually, the Patrol Division Commander should prepare an analysis report on use of force incidents. The report should be submitted to the Sheriff. The report should not contain the names of deputies, suspects or case numbers, and should include:

(a)   The identification of any trends in the use of force by members.

(b)   Training needs recommendations.

(c)   Equipment needs recommendations.

(d)   Policy revision recommendations.

### 300.10   USE OF FORCE COMPLAINTS

The receipt, processing, and investigation of civilian complaints involving use of force incidents should be handled in accordance with the Personnel Complaints Policy (Government Code § 7286(b)).

### 300.11   POLICY REVIEW

The Sheriff or the authorized designee should regularly review and update this policy to reflect developing practices and procedures (Government Code § 7286(b)).

### 300.12   POLICY AVAILABILITY

The Sheriff or the authorized designee should ensure this policy is accessible to the public (Government Code § 7286(c)).

### 300.13   PUBLIC RECORDS REQUESTS

Requests for public records involving a deputy's personnel records shall be processed in accordance with Penal Code § 832.7 and the Personnel Records and Records Maintenance and Release policies (Government Code § 7286(b)).

Copyright Lexipol, LLC 2023/04/10, All Rights Reserved.
Published with permission by Siskiyou County Sheriff's Office

EXHIBIT 4

# Search and Seizure

## 312.1   PURPOSE AND SCOPE

Both the federal and state Constitutions provide every individual with the right to be free from unreasonable searches and seizures. This policy provides general guidelines for Siskiyou County Sheriff's Office personnel to consider when dealing with search and seizure issues.

## 312.2   POLICY

It is the policy of the Siskiyou County Sheriff's Office to respect the fundamental privacy rights of individuals. Members of this department will conduct searches in strict observance of the constitutional rights of persons being searched. All seizures by this department will comply with relevant federal and state law governing the seizure of persons and property.

The Department will provide relevant and current training to deputies as guidance for the application of current law, local community standards and prosecutorial considerations regarding specific search and seizure situations, as appropriate.

## 312.3   SEARCHES

The U.S. Constitution generally provides that a valid warrant is required in order for a search to be valid. There are, however, several exceptions that permit a warrantless search.

Examples of law enforcement activities that are exceptions to the general warrant requirement include, but are not limited to, searches pursuant to the following:

- Valid consent

- Incident to a lawful arrest

- Legitimate community caretaking interests

- Vehicle searches under certain circumstances

- Exigent circumstances

Certain other activities are recognized by federal and state courts and by certain statutes as legitimate law enforcement activities that also do not require a warrant. Such activities may include seizure and examination of abandoned property, and observations of activities and property located on open public areas.

Because case law regarding search and seizure is constantly changing and subject to interpretation by the courts, each member of this department is expected to act in each situation according to current training and his/her familiarity with clearly established rights as determined by case law.

Whenever practicable, deputies are encouraged to contact a supervisor to resolve questions regarding search and seizure issues prior to electing a course of action.

Copyright Lexipol, LLC 2023/04/10, All Rights Reserved.
Published with permission by Siskiyou County Sheriff's Office

*Search and Seizure*

## 312.4  SEARCH PROTOCOL

Although conditions will vary and officer safety and other exigencies must be considered in every search situation, the following guidelines should be followed whenever circumstances permit:

(a)  Members of this department will strive to conduct searches with dignity and courtesy.

(b)  Deputies should explain to the person being searched the reason for the search and how the search will be conducted.

(c)  Searches should be carried out with due regard and respect for private property interests and in a manner that minimizes damage. Property should be left in a condition as close as reasonably possible to its pre-search condition.

(d)  In order to minimize the need for forcible entry, an attempt should be made to obtain keys, combinations or access codes when a search of locked property is anticipated.

(e)  When the person to be searched is of the opposite sex as the searching deputy, a reasonable effort should be made to summon a deputy of the same sex as the subject to conduct the search. When it is not practicable to summon a deputy of the same sex as the subject, the following guidelines should be followed:

1.  Another deputy or a supervisor should witness the search.

2.  The deputy should not search areas of the body covered by tight-fitting clothing, sheer clothing or clothing that could not reasonably conceal a weapon.

## 312.5  DOCUMENTATION

Deputies are responsible to document any search and to ensure that any required reports are sufficient including, at minimum, documentation of the following:

•  Reason for the search

•  Any efforts used to minimize the intrusiveness of any search (e.g., asking for consent or keys)

•  What, if any, injuries or damage occurred

•  All steps taken to secure property

•  The results of the search, including a description of any property or contraband seized

•  If the person searched is the opposite sex, any efforts to summon a deputy of the same sex as the person being searched and the identification of any witness deputy

Supervisors shall review reports to ensure the reports are accurate, that actions are properly documented and that current legal requirements and department policy have been met.

Copyright Lexipol, LLC 2023/04/10, All Rights Reserved.
Published with permission by Siskiyou County Sheriff's Office

EXHIBIT 5

Case 3:24-cv-02563-DJC-CSB    Document 11-5    Filed 07/25/25    Page 44 of 46

# Bias-Based Policing

## 401.1  PURPOSE AND SCOPE

This policy provides guidance to agency members that affirms the Siskiyou County Sheriff's Office's commitment to policing that is fair and objective.

Nothing in this policy prohibits the use of specified characteristics in law enforcement activities designed to strengthen the agency's relationship with its diverse communities (e.g., cultural and ethnicity awareness training, youth programs, community group outreach, partnerships).

### 401.1.1  DEFINITIONS

Definitions related to this policy include:

**Bias-based policing** - An inappropriate reliance on actual or perceived characteristics such as race, ethnicity, national origin, religion, sex, sexual orientation, gender identity or expression, economic status, age, cultural group, disability, or affiliation with any non-criminal group (protected characteristics) as the basis for providing differing law enforcement service or enforcement (Penal Code § 13519.4).

## 401.2  POLICY

The Siskiyou County Sheriff's Office is committed to providing law enforcement services to the community with due regard for the racial, cultural or other differences of those served. It is the policy of this agency to provide law enforcement services and to enforce the law equally, fairly, objectively and without discrimination toward any individual or group.

## 401.3  BIAS-BASED POLICING PROHIBITED

Bias-based policing is strictly prohibited.

However, nothing in this policy is intended to prohibit a deputy from considering protected characteristics in combination with credible, timely and distinct information connecting a person or people of a specific characteristic to a specific unlawful incident, or to specific unlawful incidents, specific criminal patterns or specific schemes.

### 401.3.1  CALIFORNIA RELIGIOUS FREEDOM ACT

Members shall not collect information from a person based on religious belief, practice, affiliation, national origin or ethnicity unless permitted under state or federal law (Government Code § 8310.3).

Members shall not assist federal government authorities (Government Code § 8310.3):

(a)  In compiling personal information about a person's religious belief, practice, affiliation, national origin or ethnicity.

(b)  By investigating, enforcing or assisting with the investigation or enforcement of any requirement that a person register with the federal government based on religious belief, practice, or affiliation, or national origin or ethnicity.

Copyright Lexipol, LLC 2023/04/10, All Rights Reserved.
Published with permission by Siskiyou County Sheriff's Office

Case 2:23-cv-02563-DJC-CKD   Document 11-5   Filed 07/25/25   Page 45 of 46

*Bias-Based Policing*

---

### 401.4   MEMBER RESPONSIBILITIES

Every member of this agency shall perform his/her duties in a fair and objective manner and is responsible for promptly reporting any suspected or known instances of bias-based policing to a supervisor. Members should, when reasonable to do so, intervene to prevent any biased-based actions by another member.

### 401.4.1   REASON FOR CONTACT

Deputies contacting a person shall be prepared to articulate sufficient reason for the contact, independent of the protected characteristics of the individual.

To the extent that written documentation would otherwise be completed (e.g., arrest report, field interview (FI) card), the involved deputy should include those facts giving rise to the contact, as applicable.

Except for required data-collection forms or methods, nothing in this policy shall require any deputy to document a contact that would not otherwise require reporting.

### 401.4.2   REPORTING OF STOPS

Unless an exception applies under 11 CCR 999.227, a deputy conducting a stop of a person shall collect the data elements required by 11 CCR 999.226 for every person stopped and prepare a stop data report. When multiple deputies conduct a stop, the deputy with the highest level of engagement with the person shall collect the data elements and prepare the report (11 CCR 999.227).

If multiple agencies are involved in a stop and the Siskiyou County Sheriff's Office is the primary agency, the Siskiyou County Sheriff's Office deputy shall collect the data elements and prepare the stop data report (11 CCR 999.227).

The stop data report should be completed by the end of the deputy's shift or as soon as practicable (11 CCR 999.227).

### 401.5   SUPERVISOR RESPONSIBILITIES

Supervisors should monitor those individuals under their command for compliance with this policy and shall handle any alleged or observed violations in accordance with the Personnel Complaints Policy.

(a) Supervisors should discuss any issues with the involved deputy and his/her supervisor in a timely manner.

1. Supervisors should document these discussions, in the prescribed manner.

(b) Supervisors should periodically review MAV recordings, portable audio/video recordings, Mobile Data Terminal (MDT) data and any other available resource used to document contact between deputies and the public to ensure compliance with the policy.

1. Supervisors should document these periodic reviews.

---

Copyright Lexipol, LLC 2023/04/10, All Rights Reserved.
Published with permission by Siskiyou County Sheriff's Office
Bias-Based Policing - 341

*Bias-Based Policing*

2. Recordings or data that capture a potential instance of bias-based policing should be appropriately retained for administrative investigation purposes.

(c) Supervisors shall initiate investigations of any actual or alleged violations of this policy.

(d) Supervisors should take prompt and reasonable steps to address any retaliatory action taken against any member of this agency who discloses information concerning bias-based policing.

## 401.6   ADMINISTRATION

Each year, the Patrol Division Commander should review the efforts of the Agency to provide fair and objective policing and submit an annual report, including public concerns and complaints, to the Sheriff.

The annual report should not contain any identifying information about any specific complaint, member of the public or deputies. It should be reviewed by the Sheriff to identify any changes in training or operations that should be made to improve service.

Supervisors should review the annual report and discuss the results with those they are assigned to supervise.

## 401.7   TRAINING

Training on fair and objective policing and review of this policy should be conducted as directed by the Training Unit.

(a) All sworn members of this agency will be scheduled to attend Peace Officer Standards and Training (POST)-approved training on the subject of bias-based policing.

(b) Pending participation in such POST-approved training and at all times, all members of this agency are encouraged to familiarize themselves with and consider racial and cultural differences among members of this community.

(c) Each sworn member of this agency who received initial bias-based policing training will thereafter be required to complete an approved refresher course every five years, or sooner if deemed necessary, in order to keep current with changing racial, identity and cultural trends (Penal Code § 13519.4(i)).

## 401.8   REPORTING TO CALIFORNIA DEPARTMENT OF JUSTICE

The Professional Standards Unit Manager shall ensure that all data required by the California Department of Justice (DOJ) regarding complaints of racial bias against deputies is collected and provided to the Records Supervisor for required reporting to the DOJ (Penal Code § 13012; Penal Code § 13020). See the Records Bureau Policy.

Supervisors should ensure that data stop reports are provided to the Records Supervisor for required annual reporting to the DOJ (Government Code § 12525.5) (See Records Bureau Policy).

Copyright Lexipol, LLC 2023/04/10, All Rights Reserved.
Published with permission by Siskiyou County Sheriff's Office