UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XAO THAO, | No. 2:23-cv-02563-DJC-CKD |
| Plaintiff, | |
| v. | ORDER |
| COUNTY OF SISKIYOU, | |
| Defendant. | |

Plaintiff Xao Thao has sued the County of Siskiyou for alleged violations of federal and state law in connection with a 2022 incident in which Plaintiff was taken into custody by the Siskiyou County Sheriff's Office ("SCSO") Deputies during the execution of a search warrant on a parcel of land near Plaintiff's purported residence. Plaintiff's claims are exclusively brought against Defendant County of Siskiyou. Presently before the Court is Defendant's Motion for Summary Judgment. (ECF No. 11.) For the reasons stated below, Defendant's Motion is granted in full.

////

////

////

////

1

**BACKGROUND**

Plaintiff alleges that on August 16, 2022, SCSO Deputies executed search warrants on a property near his home.[1] (Compl. (ECF No. 1) at 3.) Plaintiff claims that he saw the deputies arrive and walked down the hill to an adjacent vacant parcel to observe the deputies. (*Id.*) Plaintiff asserts that he was subsequently followed back to his house by SCSO Deputies who cut through Plaintiff's fence, pinned him down, placed a foot on his head and neck, handcuffed him, and kicked him in the ribs. (*Id.*) Plaintiff claims that his wife was also punched in the stomach and kneed in the leg. (*Id.*) Plaintiff alleges that as a result of these incidents, he experienced injuries, including a blood clot in his neck, that resulted in neck and chest pain. (*Id.* at 4.)

The sole named Defendant in Plaintiff's Complaint is the County of Siskiyou. (*Id.* at 1–2.) Plaintiff brings three causes of action under 42 U.S.C. § 1983 for violations of Plaintiff's constitutional rights. (*Id.* at 4–6.) Plaintiff brings an additional three causes of action for alleged violations of state law. (*Id.* 6–7.)

Defendant now seeks summary judgment as to Plaintiff's federal claims mainly on the ground that Plaintiff established liability under *Monell*, and Plaintiff's state claims on the ground that Defendant has immunity for the alleged violations of state law. Briefing of Defendant's Motion is now complete. (Mot. (ECF No. 11-1); Opp'n (ECF No. 13-1); Reply (ECF No. 14).) This matter was taken under submission pursuant to Local Rule 230(g). (ECF No. 15.)

**LEGAL STANDARD**

Summary judgment may be granted when the evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The principal purpose of summary judgment is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Therefore, the "threshold inquiry" is whether there are any

---

[1] This is the allegation in Plaintiff's Complaint. (Compl. at 3.) While subsequent testimony revealed that Plaintiff likely did not reside there, this is ultimately irrelevant for purposes of this Order.

factual issues that could reasonably be resolved in favor of either party, or conversely, whether the facts are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

In a summary judgment motion, the moving party must inform the court of the basis for the motion and identify the portion of the record that it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  If the moving party meets its initial burden, the burden then shifts to the opposing party, which must establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).  To meet their burden, parties must either cite to materials in the record supporting their position or show that the materials cited do not establish the absence or presence of a genuine dispute.  Fed. R. Civ. P. 56(c)(1).

For the opposing party to succeed and avoid summary judgment, they "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  Rather, the opposing party must produce enough evidence such that the specific facts set forth by the nonmoving party, coupled with undisputed background or facts, are such that a reasonable jury might return a verdict in its favor. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, for the moving party to succeed, the court must conclude that no rational trier of fact could find for the opposing party. *Matsushita*, 475 U.S. at 587.  However, so as not to usurp the role of the jury, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and so the court draws all reasonable inferences and views all evidence in the light most favorable to the opposing party. *Liberty Lobby*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587–88.

## DISCUSSION

### I. *Monell* Liability under Section 1983

Under the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), local governments may be held liable under section 1983 for wrongs done by the local government itself.  A municipality or other local government entity is subject to *Monell* liability when that government, "under color of some official policy, 'causes' an employee to violate another's constitutional rights."  *Monell*, 436 U.S. at 692.  A municipality, however, cannot be held liable solely for the purported constitutional violations of its employees, "or, in other words, a municipality cannot be held liable under [section] 1983 on a *respondeat superior* theory."  *Id.* at 691.  The municipality itself must have acted through an official municipal policy or custom.  *Id.* at 694.  The Ninth Circuit has recognized four theories for establishing municipal liability under *Monell*: "(1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019).

Plaintiff claims that Defendant violated Plaintiff's rights under the Equal Protection Clause, the Fourth Amendment, and the Fifth Amendment.  In asserting liability against the County for these violations, Plaintiff must establish that Defendant had a policy or custom.  Based on the Complaint, Plaintiff's claim seems to be that Defendant's policies and procedures were expressly designed to target Hmong Americans.  (*See* Compl. at 5–6.)  However, as Defendant correctly notes, Plaintiff has presented no evidence to support this allegation.  In his Opposition, Plaintiff states that "Plaintiff has presented evidence of a pattern of discriminatory enforcement practices by Siskiyou County targeting members of the Hmong community[.]"  (Opp'n at 7.)  But fails to provide any citation to such evidence.  Plaintiff also suggests that he has "identified deficiencies in the County's supervision and enforcement of its own anti-discrimination and body-worn camera policies." (*Id.*)  But again, Plaintiff fails to provide any citation to evidence supporting this claim.  As far as the Court can tell,

4

1   Plaintiff's claim regarding the deficiencies in the usage of body cameras is based
2   entirely on deputies' alleged failures to activate body cameras in connection with the
3   incident at issue in this case.[2] (*See id.* ("Specifically, in this case, multiple deputies
4   failed to activate their cameras during a violent seizure—an omission consistent with a
5   broader pattern of unchecked misconduct.").) Plaintiff cannot predicate *Monell* claims
6   based solely on the events of the incident in question. *See Trevino v. Gates*, 99 F.3d
7   911, 918 (9th Cir. 1996).
8        Plaintiff's Statement of Undisputed Facts likewise does not suggest Plaintiff has
9   any evidence to support his *Monell* claims. Of the four statements of fact Plaintiff
10  provides, only the first has any possible connection to establishing a policy or custom
11  in the County of Siskiyou. That factual allegation is that "Siskiyou County has been
12  sued by the ACLU for discriminatory enforcement targeting Hmong residents." (PSUF
13  ¶ 101.) Plaintiff's only supporting evidence for this are allegations made in a separate
14  case, *Chang v. County of Siskiyou, et al.*, No. 2:22-cv-01378. Specifically, Plaintiff
15  states that the plaintiffs in that case alleged that:

> Siskiyou County and its Sheriff Jeremiah LaRue . . . are
> engaged in a sweeping campaign to harass and intimidate
> Hmong and other Asian Americans. In service of this
> agreed upon campaign, the Defendants have used
> widespread and coordinated racial profiling in traffic stops,
> restricted access to water making it difficult for Asian
> American residents to live, and placed unlawful liens to
> dispossess Asian Americans of their land.

(*Id.*) The complaint cited by Plaintiffs goes on to note other related information, such
as that Asian American neighborhoods have been targeted in connection with

---

[2] Though the Court need not reach this issue, it also appears that this allegation is entirely unsupported by any evidence. The only evidence presented by Plaintiff was his deposition during which Plaintiff provided no testimony or evidence regarding the usage of body cameras during the incident at issue. Moreover, in Plaintiff's Statement of Undisputed Facts ("PSUF"), Plaintiff does not attempt to assert any facts regarding the usage of body cameras during this incident. (*See* PSUF (ECF No. 13-2).) This lack of evidentiary support further emphasizes that Plaintiff lacks sufficient evidence to support his *Monell* claims.

5

cannabis cultivation and that Asian American drivers are stopped "at a rate roughly twelve times greater than their proportion of the driving-age population." (*Id.*)

This singular factual allegation – that Siskiyou County has been sued by the ACLU for discriminatory enforcement targeting Hmong residents – is insufficient to support the full weight of Plaintiff's *Monell* claims on its own.  Plaintiff relies on <u>allegations</u> made in a single case with no citations to any evidentiary support underlying or supporting this allegation.  This does not establish practices of sufficient frequency and consistency to establish a custom for purposes of *Monell* liability.  *Trevino*, 99 F.3d at 918.  Moreover, these allegations concern profiling during traffic stops as well as restrictions on water and liens placed on Asian American lands.  They bear no connection to the present case besides the general similarities that Plaintiff is a Hmong American in Siskiyou County, and these allegations concern discrimination against Hmong Americans in the County.

To be clear, it is entirely possible that Hmong Americans, including Plaintiff, are subject to discriminatory conduct in Siskiyou County.  But at the summary judgment stage Plaintiff cannot rest his *Monell* claims entirely on his own conclusory claims of discrimination, the events at issue in this case, and vaguely related allegations of discriminatory conduct that arose in other situations.  *See Stewart v. Block*, 938 F. Supp. 582, 590 (C.D. Cal. 1996) (bare and conclusory allegations insufficient to raise an issue of material fact as to the existence of a policy); *see also Bethune v. City of Washougal*, 642 F. Supp. 3d 1246, 1252 (W.D. Wash. 2022) (rejecting *Monell* claims that "rest on mere conclusory allegations.").  Defendant has met their burden to show an absence of evidence supporting Plaintiff's claims, and Plaintiff has failed to present <u>any</u> evidence supporting that there was a policy, practice, or procedure in the County that led to the alleged violations of Plaintiff's Constitutional rights in this case.  As such, there is not a genuine dispute of material fact on this issue, and Defendants are entitled to judgment as a matter of law.

## II. Immunity from State Law Claims Under California Government Code Section 815

Under section 815(a), Defendant has immunity from claims arising out of the act or omission of the County or its employees. *See Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 899 (2008) ("section 815 abolishes common law tort liability for public entities"). Section 815(a) renders Defendant immune to Plaintiff's claims unless a statute specifically authorizes liability. *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 840 (9th Cir. 1996) ("In California, a governmental entity can only be sued in tort pursuant to an authorizing statute or enactment."). Defendant argues that this bars Plaintiff's state law claims. (Mot. at 10.)

In Opposition, Plaintiff cites Government Code section 820 "and related doctrines" to assert that section 815 does not render Defendant immune to Plaintiff's state law claims. Section 820(a) provides "[e]xcept as otherwise provided by statute (including Section 820.2), a public employee is liable for injury caused by his act or omission to the same extent as a private person." This section provides liability for public employees. It does not provide a pathway for liability for public entities such as Defendant.

However, Plaintiff also references the possibility that Defendant is "liable for the acts of its employees committed within the scope of employment." (Opp'n at 8.) This seems intended to be a reference to Government Code section 815.2. Section 815.2 only provides for vicarious liability for torts committed by an employee within the scope of their employment; it does not provide direct liability for a public entity. *See* Cal. Gov't Code § 815.2; *see also Cardinal v. Buchnoff*, No. 06-cv-00072–MMA-BLM, 2010 WL 3609489, at *1 (S.D. Cal. Sept. 14, 2010). Thus, section 815.2 only provides liability to the extent that a plaintiff establishes the liability of a public entity's employee.

Plaintiff has not established liability for any of Defendant's employees here. The only evidence cited by Plaintiff in support of his claims during his deposition testimony

in which Plaintiff largely responded "I plead the Fifth Amendment" to questions regarding the facts at issue in this case.[3] The only testimony about the incident in question that Plaintiff provided was that two people had chased him (Pl's Dep. (ECF No. 11-4) at 20:4–24) and that when they eventually intercepted Plaintiff, his face was pushed into the ground, his neck was stepped on for about two to three minutes, that his thighs were kicked (*id.* at 21:6–10, 21:18–21:12, 22:10–14). Plaintiff did not identify who committed these actions and even disavowed any knowledge of whether the individuals were law enforcement. (*Id.* at 20:4–12; *see id.* at 20:18–22 ("I didn't know who it was. I was just scared, so I just ran."); *see also id.* at 21:14–17 ("Q. 'So these people that chased you and took you down and kicked you, they were not law enforcement; is that your story?' A. 'I plead the Fifth Amendment.'")). With only this testimony by Plaintiff and no further evidence presented, it is impossible to determine if Defendant's employees have any involvement with, or liability from, the injuries alleged by Plaintiff.

Given the above, Defendant is entitled to immunity under section 815. Plaintiff has not presented any evidence that establishes that any exceptions to that rule are applicable. As such, Defendant is also entitled to judgment as a matter of law as to Plaintiff's state law claims.

////
////
////
////
////
////
////

---

[3] Notably, Plaintiff invoked the Fifth Amendment and refused to testify regarding many allegations Plaintiff himself made in the Complaint. *See S.E.C. v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998) ("Parties are free to invoke the Fifth Amendment in civil cases, but [in civil proceedings] the court is equally free to draw adverse inferences from their failure of proof.").

**CONCLUSION**

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Defendant's Motion for Summary Judgment (ECF No. 11) is GRANTED;
2. Judgment is entered in Defendant's favor; and
3. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **September 2, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC1 – thao23cv02563.msj